*Bentley, Bentley & Bentley, Fred D. Bentley, Jr., Debra H. Bernes, Linton K. Crawford, Jr.*, for appellee.

### S02A1432. IN RE J. M.
(575 SE2d 441)

FLETCHER, Chief Justice.

The juvenile court found that sixteen-year-old J.M. violated Georgia's fornication statute, OCGA § 16-6-18, by having sexual intercourse with his sixteen-year-old girlfriend G.D.[1] in her bedroom and adjudicated him delinquent. On appeal, J.M. contends that his constitutional right of privacy prohibits the State from criminalizing his conduct. As we held in *Powell v. State*,[2] the Georgia Constitution protects from criminal sanction private, unforced, non-commercial acts of sexual intimacy between persons legally able to consent. Because the State relied on conduct that was protected by Georgia's right to privacy to adjudicate J.M. delinquent, we reverse.

G.D. lived with her parents. Between 2:00 a.m. and 5:00 a.m. on September 16, 2001, she brought appellant J.M. into her bedroom. She placed a stool next to the closed bedroom door, and she and J.M. engaged in sexual intercourse on the floor of her bedroom. When G.D.'s mother walked in and discovered them having sexual intercourse, J.M. jumped out of the bedroom window and ran.

Although G.D.'s parents did not pursue any charges against J.M., the State initiated delinquency proceedings. Based on his violation of the fornication statute, the juvenile court adjudicated J.M. delinquent, and this appeal followed.

1. In 1905, this Court recognized that the Georgia Constitution guarantees its citizens a "right of privacy."[3] Since then, the courts have described Georgia's right to privacy as, among other things, "protection for the individual from unnecessary public scrutiny,"[4] the individual right "to be free from the publicizing of one's private affairs with which the public has no legitimate concern,"[5] and " 'the right to define one's circle of intimacy.' "[6] Georgia's right to privacy

---

[1] The sixteen-year-old female's name is spelled two different ways in the record, which would result in her initials being either J.D. or G.D. We will refer to her by the initials G.D.

[2] 270 Ga. 327, 336 (510 SE2d 18) (1998).

[3] *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (50 SE 68) (1905).

[4] *Powell*, 270 Ga. at 330 (citing *Athens Observer v. Anderson*, 245 Ga. 63 (263 SE2d 128) (1980)).

[5] *Powell*, 270 Ga. at 330 (citing *Gouldman-Taber Pontiac v. Zerbst*, 213 Ga. 682 (100 SE2d 881) (1957) (punctuation omitted)).

[6] *Powell*, 270 Ga. at 330 (quoting *Macon-Bibb Cty. Water &c. Auth. v. Reynolds*, 165 Ga. App. 348, 350 (299 SE2d 594) (1983)).

means that citizens have a fundamental constitutional right to "be let alone," provided they are not interfering with the rights of other individuals or of the public.[7] The right to privacy has "a value so essential to individual liberty in our society that its infringement merits careful scrutiny by the courts."[8]

Examining Georgia's criminal sodomy statute in *Powell*, we held that the Georgia Constitution prohibits the State from criminalizing "private, unforced, non-commercial acts of sexual intimacy between persons legally able to consent."[9] This constitutional rule controls our decision in this case.

2. We begin our analysis by considering whether J.M.'s right to privacy encompassed his sexual liaison with G.D. Both were sixteen years old at the time of the act, and the General Assembly has established sixteen as the age at which a person can legally consent to sexual intercourse.[10] They willingly engaged in sexual intercourse, and there was no force involved. Neither of them paid the other to engage in sexual activity, and there is no evidence of any other arrangement that would make their acts commercial in nature.

Finally, J.M. and G.D.'s acts were private. The bedroom was G.D.'s personal bedroom, and she invited J.M. to enter the house and her bedroom. J.M. had been to G.D.'s house several times before, and he had never been told that he was not welcome to return to her house. Although G.D.'s mother did not condone her daughter's behavior, she acknowledged that G.D. could reasonably expect privacy in various parts of the family home at various times, including in G.D.'s bedroom. Before beginning her intimacies with J.M., G.D. ensured the bedroom door was closed and placed a stool against the door, further evidencing her and J.M.'s efforts to keep their acts private. Under these facts, we find that they intended to keep their sexual activity private and took reasonable steps to ensure their privacy. Accordingly, Georgia's right to privacy encompassed J.M.'s actions.

The State contends that, regardless of what privacy rights G.D. may enjoy in her home, J.M. has no right to privacy in the home of another person. We reject the broad assertion that people abandon their constitutional guarantee to privacy when they enter as guests into the private home of another. An invitation to enter another person's private home does not include an implicit condition that the guest surrender his constitutional right to privacy.[11] Indeed,

---

[7] *Powell*, 270 Ga. at 330; *Pavesich*, 122 Ga. at 197.

[8] *Powell*, 270 Ga. at 329 (citing *Ambles v. State*, 259 Ga. 406 (383 SE2d 555) (1989) (punctuation omitted)).

[9] 270 Ga. at 336.

[10] OCGA § 16-6-3 (a) (person commits statutory rape by having sexual intercourse with someone other than spouse who is less than 16 years old).

[11] Even under the narrower Fourth Amendment analysis on which the State relies,

accepting the State's parsing-of-privacy argument would lead to the absurd result that, when two people are engaged in sexual intercourse in a private residence and only one of them lives in the house, the one who is a guest has no right to privacy, despite being engaged in the same sexual intercourse in the same place as the one who possesses a right to privacy. We do not decide today whether a guest's privacy rights are always the same as the host's rights because, at a minimum, both the guest and the host have a right to be free from government intrusion when they enter the host's bedroom to engage privately in consensual, non-commercial sexual intimacy, and they are legally old enough to make that decision.

3. We next examine whether the State had a compelling interest that it vindicated through means that were narrowly tailored to accomplish only that compelling interest.[12] Here, the State's interest in "shielding the public from inadvertent exposure to the intimacies of others" is not at issue because the intercourse occurred in a private residence.[13] The State's interests in protecting people from engaging in sexual acts against their will, whether through force or inability to consent, are not implicated because J.M. and G.D. were legally capable of consenting, and they willingly engaged in sexual intercourse. Likewise, the State's interest in restricting commercial sexual activity is not involved.[14]

The State offers its interest in regulating the behavior of "minors" as grounds for prohibiting J.M. and G.D.'s conduct. Whether labeled "minor" or "adult," however, the General Assembly has already determined that persons who are at least sixteen years old are sufficiently old to decide whether to engage in sexual intercourse.[15] Under *Powell*, the legal capacity to decide whether to engage in sexual intercourse is one of the critical elements in determining whether Georgia's right to privacy protects sexual conduct, not the label of "minor" or "adult."[16] Therefore, the only remaining rationale for the fornication statute is to enable the State to regulate the private, sexual conduct of persons who the legislature has determined are capable of consenting to that conduct, and that is an insufficient state interest to overcome Georgia's constitutional protections of privacy.[17] Because the State cannot use Georgia's criminal laws to proscribe J.M.'s conduct in this case, we reverse his adjudication as a

---

guests enjoy certain expectations of privacy in the homes of their hosts. See, e.g., *Minnesota v. Olson*, 495 U. S. 91 (110 SC 1684, 109 LE2d 85) (1990).

[12] See *Powell*, 270 Ga. at 332-333.

[13] See id. at 333; compare *In re C. P.*, 274 Ga. 599, 600 (555 SE2d 426) (2001).

[14] See *Powell*, 270 Ga. at 333.

[15] See OCGA § 16-6-3 (a).

[16] See id. at 327, 336 (one of the participants was seventeen years old).

[17] Id. at 334, 336.

delinquent for violating OCGA § 16-6-18.

Nothing in this opinion should be read to address G.D.'s parents' rights to regulate what occurs inside their home, including who enters their house and under what circumstances. Rather, our opinion simply affirms that, as we held in *Powell*, the government may not reach into the bedroom of a private residence and criminalize the private, non-commercial, consensual sexual acts of two persons legally capable of consenting to those acts.

*Judgment reversed. All the Justices concur, except Sears, P. J., who concurs in judgment only.*

CARLEY, Justice, concurring.

The doctrine of stare decisis insures consistency and predictability in American jurisprudence. Adherence to that principle requires that, today, I join the Court's opinion. *Powell v. State*, 270 Ga. 327 (510 SE2d 18) (1998).

DECIDED JANUARY 13, 2003.

*Cook, Lundy & Sanderson, Catherine B. Sanderson, Gerald R. Weber, Jr., Robert Lo-Pei Tsai, Elizabeth L. Littrell*, for appellant.
*William T. McBroom III, District Attorney, James E. Sherrill, Jamie K. Inagawa, Assistant District Attorneys*, for appellee.
*Jenner & Block, Julie M. Carpenter*, amicus curiae.