S13A0784. WATSON v. THE STATE.
(750 SE2d 143)

HUNSTEIN, Justice.

In this criminal appeal, Appellant James Watson challenges the constitutionality of Georgia's solicitation of sodomy statute, OCGA § 16-6-15. Watson, who at the time was an officer with the City of Nashville Police Department, was convicted of the misdemeanor offense of solicitation of sodomy as well as the felony violation of oath

of office, arising from his interactions with 17-year-old Chase Browning in March 2009.[1] Watson contends that the solicitation of sodomy statute is unconstitutional both on its face and as applied to him, as an infringement on his rights to free speech, privacy, and due process of law under the United States and Georgia Constitutions. Watson also challenges the sufficiency of the evidence, the sufficiency of the indictment, and the trial court's jury instructions. We now reaffirm the constitutionality of the solicitation of sodomy statute, but find that the evidence was insufficient to convict Watson under that statute. In addition, because the counts in the indictment charging Watson with violating his oath of office were expressly premised on a finding that he had violated the solicitation of sodomy statute, we likewise must reverse the convictions on those counts.

The relevant facts are not in dispute. On March 1, 2009, Browning was at a friend's house when a dog attack occurred, and police were called. Watson, who was on duty with the City of Nashville Police Department, was dispatched to the scene. After the incident, Watson gave Browning a ride home. Browning testified that, during the car ride, Watson told Browning that he "wasn't supposed to be giving [Browning] a ride home" and insinuated that he deserved "something to repay for the ride." Also during the ride, Browning testified, Watson looked at him and made a lewd gesture, "grab[bing] at his genitals and pull[ing] down on his pants."

The following day, Watson sent Browning a Facebook message that stated:

> I guess we need to discuss my payment for yesterday. You asked what I wanted, so does that mean I get what I want, no matter what it is. I guess I know what I want I am just a little nervous about asking, because I am not sure you will go for it.

The day after that, Watson sent Browning a MySpace message, again referring to "my payment" and asking Browning to respond either

---

[1] Watson was indicted in February 2010 by a Berrien County grand jury on two counts each of violation of oath of office (Counts 1 and 3) and solicitation of sodomy (Counts 2 and 4). At the conclusion of a jury trial held on March 24, 2011, Watson was convicted on all counts, and he was subsequently sentenced to two concurrent terms of five years — two to be served in prison and the balance on probation — on the violation of oath convictions, as well as two terms of twelve months for solicitation of sodomy, to be served concurrently. Watson was granted a supersedeas bond and thereafter filed a timely motion for new trial. The motion was amended in December 2011, heard in October 2012, and denied in November 2012. Watson filed a timely notice of appeal, and the case was docketed to the April 2013 term of this Court. The case was argued on May 6, 2013, after which it was submitted for this Court's disposition.

online or to Watson's cell phone. On March 4, Browning responded to Watson by text message, asking what Watson meant regarding "payment." Watson replied, "What about me and u getting 2gether sometime 2 have a little fun if u know what I mean." Declining, Browning responded, "Naw man I ain't like that," to which Watson replied, "Ok well if u change ur mind just let me know u may like it I didn't until I let someone talk me into it."

Browning, who testified that this exchange made him feel "very awkward," immediately reported this exchange to his high school tennis coach, and school officials contacted law enforcement. In the presence of a GBI agent, Browning placed a phone call on March 13, 2009 to Watson, who was on duty at the time, suggesting he was considering Watson's proposal and asking what to expect. During that conversation, Watson proposed that they meet that evening at the unoccupied home of one of Watson's relatives. After the conversation, Watson sent Browning a text message asking him to come to Watson's house instead. In a second phone conversation, Watson explicitly proposed and discussed acts of sodomy. In both conversations, Watson stated repeatedly that it was up to Browning as to what ultimately would happen and that Browning did not have to do anything he did not want to do. The phone calls were recorded and played for the jury at trial.

1. The solicitation of sodomy statute provides: "[a] person commits the offense of solicitation of sodomy when he solicits another to perform or submit to an act of sodomy." OCGA § 16-6-15 (a). "Sodomy" is defined as the "perform[ance] or submi[ssion] to any sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a) (1). We have previously held that, in order to withstand a constitutional attack, the sodomy statute must be construed in a limited manner, so as not to criminalize "private, unforced, non-commercial acts of sexual intimacy between persons legally able to consent." *Powell v. State*, 270 Ga. 327, 336 (3) (510 SE2d 18) (1998). This limiting construction is necessary, the Court held, to avoid infringing on fundamental privacy rights guaranteed under the Georgia Constitution. Id. at 332, 335-336 (3); accord *In re J. M.*, 276 Ga. 88 (575 SE2d 441) (2003) (applying *Powell* to invalidate adjudication of delinquency for violating fornication statute); see also *Lawrence v. Texas*, 539 U. S. 558 (123 SCt 2472, 156 LE2d 508) (2003) (holding Texas sodomy statute making it a crime for two consenting adults of the same sex to engage in private sexual activity violated due process under U. S. Constitution).

Subsequent to our decision in *Powell*, this Court upheld the solicitation of sodomy statute against a constitutional challenge on

free speech grounds. In *Howard v. State*, 272 Ga. 242 (527 SE2d 194) (2000), we held that "this Court can narrowly construe the solicitation of sodomy statute to only punish speech soliciting sodomy that is not protected by the Georgia Constitution's right to privacy." Id. at 244 (1). Though Watson invites us to overrule *Howard*, we decline to do so, because we believe its holding is well-founded. As we have recently reaffirmed, even statutes that impose content-based restrictions on free speech will not be deemed facially invalid if they are readily subject to a limiting construction. See *Final Exit Network, Inc. v. State of Ga.*, 290 Ga. 508, 511 (3) (722 SE2d 722) (2012); see also *State of Ga. v. Davis*, 246 Ga. 761, 762 (1) (272 SE2d 721) (1980) (declining to invalidate criminal solicitation statute, where it could be construed as criminalizing "only such language as creates a clear and present danger of a felony being committed"). We therefore adhere to our holding in *Howard* and reaffirm that the solicitation of sodomy statute is constitutional to the extent it is construed to prohibit only that speech by which a person solicits another to commit the offense of sodomy as narrowly defined in *Powell*.[2]

In so doing, we expressly reject Watson's contention, derived from the dissenting opinion in *Howard*, that adopting a limiting construction of the solicitation of sodomy statute creates such vagueness as to violate due process. See *Howard*, 272 Ga. at 247-248 (2) (Sears, J., dissenting). Watson asserts that our narrowed construction of the solicitation statute fails to afford individuals fair notice of what conduct is prohibited and renders the statute susceptible to arbitrary and selective enforcement. We disagree. Under the applicable statutes, as construed in *Powell* and *Howard*, an individual violates the solicitation of sodomy statute if he (1) solicits another individual (2) to perform or submit to a sexual act involving the sex organs of one and the mouth or anus of the other and (3) such sexual act is to be performed (a) in public; (b) in exchange for money or anything of commercial value; (c) by force; *or* (d) by or with an individual who is incapable of giving legal consent to sexual activity. See OCGA §§ 16-6-15 (a), 16-6-2 (a) (1); *Howard*, 272 Ga. at 244 (3); *Powell*, 270 Ga. at 336 (3). This definition of the crime of soliciting sodomy is sufficiently precise to "give a person of ordinary intelligence fair warning that specific conduct is forbidden or mandated." *Santos v. State*, 284 Ga. 514, 514 (1) (668 SE2d 676) (2008).

---

[2] But see *MacDonald v. Moose*, 710 F3d 154 (4th Cir. 2013) (holding that Virginia's broad sodomy statute was not subject to a limiting construction and therefore was unconstitutional on its face under *Lawrence v. Texas*, supra), cert. denied, 2013 WL 3211338 (U. S. Oct. 7, 2013).

2. Having thus defined the scope of the conduct that is prohibited by the statute, we now examine whether the State satisfied its burden of proving that Watson did in fact violate the solicitation of sodomy statute. To do so, we must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt all the essential elements of each crime of which Watson was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); *Walker v. State*, 247 Ga. 746 (2) (280 SE2d 333) (1981). The evidence shows that Watson initiated a series of communications with Browning that became increasingly sexual in nature. Watson clearly invited Browning to engage in sexual acts falling within the express language of the sodomy statute. Therefore, the evidence was sufficient on the first two of the three elements of the offense delineated above.

However, the evidence was not sufficient as to the third element. That is, Watson did not propose acts of sodomy that were to be (a) of a public nature; (b) in exchange for money or anything of commercial value; (c) compelled by force; or (d) performed by those not legally capable of consenting. First, Watson never suggested that any encounter occur in a public place, and the only specific places he proposed meeting were private homes. The mere fact that Watson was a public officer does not render "public" his offer to engage in sex in a private residence. Second, there was never any suggestion, express or implied, that money or anything of commercial value would be exchanged in connection with the encounter. Construed in context, Watson's references to "payment" simply do not bring this situation into the commercial realm.

Third, though the repeated suggestion that Browning owed Watson something in exchange for the car ride home was certainly inappropriate, particularly as directed from a uniformed, on-duty police officer to a 17-year-old boy, we do not find that such conduct rises to the level of intimidation or coercion that would give rise to a finding of sexual contact by force. In the context of sexual offenses, we have defined the term "force" to mean "acts of physical force, threats of death or physical bodily harm, or mental coercion, such as intimidation" such as would be "sufficient to instill in the victim a reasonable apprehension of bodily harm, violence, or other dangerous consequences to [oneself] or others." (Citation and punctuation omitted.) *Brewer v. State*, 271 Ga. 605, 607, 608 (523 SE2d 18) (1999); see, e.g., *Richardson v. State*, 256 Ga. 746 (2) (353 SE2d 342) (1987) (sexual contact was deemed forcible where directed by defendant at stepdaughter, by force of threats, beginning when she was twelve). Here, while Browning testified that Watson's contacts made him feel

"very awkward," there was no evidence that Browning believed Watson posed any danger to him or others. Rather, the evidence shows that Watson repeatedly told Browning that he would not have to do anything he did not want to do. Moreover, Browning actually declined Watson's overture, after which the parties had no further contact until Browning contacted Watson while in the presence of law enforcement. And the mere fact that Watson occupied a position of authority with respect to Browning is not sufficient to show "force" in this context. See *State v. Eastwood*, 243 Ga. App. 822 (535 SE2d 246) (2000) (no evidence of force where schoolteacher engaged in private, consensual sexual relations with student). In sum, the State has failed to prove that the proposed sodomy would have been accomplished by "force" as we have defined it in the realm of sexual offenses.

Finally, because sixteen is the age at which persons are deemed legally capable of consenting to sexual intercourse, see *In re J. M.*, 276 Ga. at 89 (2), both parties here were legally capable of consenting to sexual contact. In sum, though the evidence was sufficient to prove the first and second elements in our definition of solicitation of sodomy, it was insufficient to prove the third element. Accordingly, Watson's convictions and sentences for solicitation of sodomy must be reversed.

3. Count 1 of Watson's indictment charged him with violating his oath of office as follows:

> the said accused, on or about the 13th day of March, 2009, in Berrien County, Georgia, then and there did, being a public officer, a police officer of the Nashville, Georgia Police Department, **willfully and intentionally violate the terms of his sworn oath to comply with the laws of the State of Georgia by soliciting sodomy in violation of Official Code of Georgia Annotated Section 16-6-15 (a)**, when he offered to engage in oral sex and anal sex with Chase Browning, contrary to the laws of said State, the good order, peace and dignity thereof.

(Emphasis supplied.) Count 3 of the indictment, which charges Watson with committing the same offense on March 4, 2009 through his text message exchange with Browning, uses identical language in describing the manner in which Browning violated his oath: "willfully and intentionally violate[d] the terms of his sworn oath to comply with the laws of the State of Georgia by soliciting sodomy in

violation of [OCGA §] 16-6-15 (a)." Given our conclusion in Division 2 that Watson did not in fact commit the offense of solicitation of sodomy, the basis upon which Counts 1 and 3 are premised is now nonexistent.

"[W]here the defendant is charged by a narrowly drawn indictment with a specific crime it is not within the power of the judge or the jury to interpret the facts as presented at trial to support an alterative, separate offense." *State v. Hightower*, 252 Ga. 220, 223 (312 SE2d 610) (1984); see also *Bell v. State*, 227 Ga. 800, 802 (1) (183 SE2d 357) (1971) (" 'an unnecessarily minute description of a necessary fact must be proved as charged' "); *Tuggle v. State*, 145 Ga. App. 603 (2) (244 SE2d 131) (1978) (insufficiency of indictment cannot be remedied by adducing at trial evidence of element that is missing). We are therefore constrained to reverse Watson's convictions for violation of oath of office.

*Judgment reversed. All the Justices concur.*

DECIDED OCTOBER 21, 2013.

*Wilmot & Powell, Robert C. Wilmot, Emily B. Vowell*, for appellant.

*Richard L. Perryman III, District Attorney, Patrick Warren, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.