**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2014**

# In the Court of Appeals of Georgia

A14A0643. JORDAN v. THE STATE.

BRANCH, Judge.

Following his convictions for aggravated assault and sodomy[1] and the denial of his motion for new trial, James William Jordan appeals and contends the trial court erred instructing the jury on the law of sodomy and by allowing evidence of a similar transaction. We agree that the trial court erred when it failed to respond to a question from the jury by informing the jury of the category of sexual acts decriminalized by our Supreme Court's decision in *Powell v. State*, 270 Ga. 327 (510 SE2d 18) (1998), which amounted to Jordan's sole defense to the sodomy charge. We therefore reverse Jordan's conviction and remand for a new trial.

---

[1] Jordan was acquitted of rape and kidnapping.

Construed in favor of the verdict, see *Jackson v. Virginia*, 443 U. S. 307 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that the victim and Jordan ended their romantic relationship in mid-February 2009 but that the victim admitted having sex with Jordan twice in the 24 hours leading up to the incident at issue. On the evening of February 27, 2009, the victim, Jordan, and Liane Miller returned to Miller's house following an evening at a local establishment. Miller asked Jordan to leave after he discharged a firearm in her house, and the victim left with him. The victim then walked a short distance to the place where she was staying, arguing with Jordan along the way. When the two reached the driveway, Jordan grabbed her hair and shirt, and when the victim resisted, her shirt came off. Jordan told the victim that he had a pistol in his pocket, and he ordered her to go with him to his camper located a short distance away and held her arm as they walked. In the camper, Jordan told the victim to undress, called her a whore, and ordered her to perform oral sex on him. When she refused, he forced her by putting a knife to her throat, and forced her movements during oral sex such that she sustained injuries and threw up. While still holding the victim at knifepoint, Jordan then attempted to have forcible anal sex with her. When that attempt was unsuccessful, Jordan held the victim against a wall by the neck with her feet off the ground and told her he was going to

2

kill her if she left him. To escape, the victim told Jordan that she would call another woman so the three of them could have sex, and she called Miller to ask to borrow her car. When the couple returned to Miller's house, Jordan asked Miller if he could use the car, but the victim signaled to Miller by putting her hands to her throat and shaking her head "no," and Miller refused Jordan's request. Jordan became angry, and the victim ran to the bathroom, locked herself in, and called the police. Jordan threatened to kick the door down, but the victim stayed in the bathroom until the police arrived and arrested Jordan.

The State also introduced evidence showing that Jordan's uncle suggested to the victim that she testify that she could not recall the events, as well as evidence that Jordan asked the victim to tell the jury that she had lied to the police and that "it was all willing[ ] and rough sex." In addition, the State introduced a letter from Jordan to the victim in which he professed love to her and stated

> If I get convicted, do not blame yourself for it, but with you on my side, the odds are for me. He does not have a case on me without you . . . but he don't know that you are going to come to court for me and he don't know that you are going to be Ms. Jordan when I get out.

The sexual assault nurse who saw the victim within six hours of the incident testified that the victim's injuries were "the most severe injury to an oral cavity that I've seen

[since 1996]." The nurse also testified that markings on the victim's neck were consistent with having a knife held against her neck, that bruises on her neck were consistent with having been choked, and that the victim had injuries in the anal area.

1. The evidence was sufficient to support the convictions of aggravated assault, for threatening to injure the victim with the knife, and non-consensual sodomy, for forcing the victim to engage in oral sex. See OCGA §§ 16-5-21 (a) (aggravated assault); 16-6-2 (a) (1) (sodomy).

2. Jordan contends the trial court erred by failing to give a correct jury charge regarding sodomy in its initial charge and by failing to respond properly to the jury's question about the definition of sodomy. We agree with the second of these contentions.

The trial court instructed the jury that Jordan had been charged "with the offense of sodomy for the said accused . . . did perform a sexual act with the person of [the victim] involving the sex organs of the accused and the mouth of said person," which tracks the language of OCGA § 16-6-2 (a) (1). Following the complete charge to the jury, Jordan asked that the term "by force" be added to the sodomy charge, citing *Powell*, 270 Ga. at 336 (3) ("OCGA § 16-6-2, insofar as it criminalizes the performance of private, unforced, non-commercial acts of sexual intimacy between

4

persons legally able to consent, manifestly infringes upon a constitutional provision which guarantees to the citizens of Georgia the right of privacy.") (citation and punctuation omitted). See also *State v. Eastwood*, 243 Ga. App. 822, 823 (535 SE2d 246) (2000) (applying *Powell* to uphold the trial court's decision to void defendant's sodomy convictions where facts showed that defendant engaged in consensual, unforced, private, and noncommercial acts of sodomy with a person legally able to give consent).

The trial court denied the request. During the deliberations, the jury asked the court about the "legal definition of sodomy." In response, the court simply read to the jury from the statute as follows: "A person commits the offense of sodomy when he performs any sexual act involving the sex organs of one person and the mouth or anus of another." Jordan did not object to the court's answer. On appeal, Jordan argues that because consent was argued to the jury as his sole defense, the court's refusal to add the term "by force" to the charge was clearly harmful and erroneous as a matter of law.

We first point out that Jordan did not present a written request to charge on *Powell* or consent as a defense to sodomy, and

5

> [a] criminal defendant is ordinarily required to present written requests for any desired jury instructions. OCGA § 5–5–24 (b). He is relieved of this duty only where the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence.

*Shepherd v. State*, 280 Ga. 245, 252 (4) (626 SE2d 96) (2006) (citation and punctuation omitted). Nevertheless, "[w]hen a given instruction fails to provide the jury with the proper guidelines for determining guilt or innocence, it is clearly harmful and erroneous as a matter of law." *Chase v. State*, 277 Ga. 636, 639 (2) (592 SE2d 656) (2004) (citations and punctuation omitted). Specifically, "'[a] trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge.'" *Price v. State*, 289 Ga. 459 (2) (712 SE2d 828) (2011), quoting *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991). In addition, "[w]hen the jury is confused and in doubt and requests further instructions on a particular point, it is the duty of the court to further instruct them." *Freeman v. State*, 142 Ga. App. 293, 294-295 (4) (235 SE2d 560) (1977) (citations omitted).

6

Force is not an "element" of the sodomy statute.[2] Nonetheless, our Supreme Court's decision in *Powell* decriminalized "private, unforced, non-commercial acts of sexual intimacy between persons legally able to consent" that would otherwise fall under the purview of the sodomy statute. 270 Ga. at 336 (3). Further, in a case involving solicitation of sodomy that necessarily involved the definition of sodomy under Georgia law, our Supreme Court has held that

> as construed in *Powell* and *Howard* [*v. State*, 272 Ga. 242 (527 SE2d 194) (2000)], an individual violates the solicitation of sodomy statute if he (1) solicits another individual (2) to perform or submit to a sexual act involving the sex organs of one and the mouth or anus of the other and (3) such sexual act is to be performed (a) in public; (b) in exchange for money or anything of commercial value; (c) *by force*; or (d) by or with an individual who is incapable of giving legal consent to sexual activity.

*Watson v. State*, 293 Ga. 817, 820 (1) (750 SE2d 143) (2013) (emphasis supplied). The facts before us raise no issue as to the scenarios raised in categories (3) (a), (b), or (d) of *Watson*. Yet even in the wake of the jury's question on the definition of sodomy, the trial court failed to inform the jury that an absence of force was, under

---

[2] We also note that the facts as presented to the jury may well have justified a charge of aggravated sodomy, which is distinguished from sodomy by either the use of "force . . . against the will of" a victim or a victim's age being "less than ten years." OCGA § 16-6-2 (a) (2).

7

the facts of this case and in light of *Powell*, *Howard*, and *Watson*, a possible defense to that crime. In short, and although the State put on evidence that Jordan forced the victim to engage in sodomy, the trial court should have treated Jordan's request that the jury be charged on force "as an element" of the sodomy statute as a request to charge on the category of "private, unforced, non-commercial acts of sexual intimacy between persons legally able to consent" decriminalized in *Powell*, which the record shows was Jordan's sole defense to the crime. Accordingly, we reverse Jordan's conviction of sodomy and remand for a new trial on that charge. See *Price*, 289 Ga. at 461-462 (2) (reversing conviction for burglary when trial court failed to charge jury on defendant's sole defense of mistake of fact, and when "the charge given actually did nothing to properly inform the jury about the true nature" of that defense); *Boone v. State*, 250 Ga. App. 133, 144 (16) (549 SE2d 713) (2001) (reversing only those convictions affected by erroneous jury instruction).

3. Jordan contends the trial court erred by allowing similar transaction evidence. Evidence of a similar transaction may be admitted if the State carries its burden of showing that:

> (1) it seeks to introduce the evidence "not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of

8

inadmissibility"; (2) "there is sufficient evidence to establish that the accused committed the independent offense or act"; and (3) "there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter."

*Moore v. State*, 290 Ga. 805, 807 (725 SE2d 290) (2012), quoting *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991)). A trial court's ruling to admit evidence of a similar transaction, is reviewed under an abuse of discretion standard but factual findings are accepted unless clearly erroneous. *Reeves v. State*, 294 Ga. 673, 676 (2) (755 SE2d 695) (2014) (citation omitted). "Accordingly, we will not disturb the findings on the issue of similarity or connection of similar transaction evidence unless the finding is clearly erroneous." Id. (citation omitted).

At the beginning of the trial, L. L., the victim in the similar transaction, testified that she had dated Jordan for a few months toward the end of 2005, but that one time in early 2006, Jordan came to her home and told her that he missed her. When she told him she did not want to talk about it, Jordan put his arm across her, pinned her down, choked her, and pulled her pants down as L. L. struggled to pull them back up. Jordan then grabbed L. L., pulled her to the ground, pinned her down and jerked her pants completely off. L. L. pleaded with him to stop, but Jordan told her the she was a

9

whore, and [that] he'd see me dead before anybody else would have [her]." Jordan then raped her violently and said, "Jordans don't take no for an answer." When Jordan saw that L. L.'s roommates were returning, Jordan pulled a knife out of his pants, stuck it to L. L.'s throat, and told her that if she told anyone about what happened, he would kill her and that she "would never see [her] kids again." Within a couple of days of the incident, L. L. contacted Cynthia O'Barr of the Franklin County Sheriff's Office and told O'Barr that she had been raped.

"[T]he proper focus in a similar transaction case is on the similarities between the two transactions and not the differences." *Reeves*, 294 Ga. at 676-677 (2) (citation omitted). Further, "[t]he exception to the general rule that evidence of independent crimes is inadmissible has been most liberally extended in the area of sexual offenses." *Johnson v. State*, 242 Ga. 649, 653 (3) (250 SE2d 394) (1978) (citations omitted).

Here, Jordan contends the two incidents were not sufficiently similar because the evidence did not show that L. L. was raped. But, as shown above, the record belies this assertion. Jordan also contends that the evidence regarding L. L. was not offered for a proper purpose. But prior to the May 2009 trial, the State filed a notice of intent to produce evidence of a similar transaction for the purpose of showing the

10

defendant's course of conduct and bent of mind, "which were appropriate purposes under Georgia law at the time of appellant's trial." *Reeves*, 294 Ga. at 675 (2) (footnote omitted).[3] Jones does not challenge any other aspect of the trial court's decision.

Our review shows that both the victim in this case and the victim in the similar transaction were Jordan's ex-girlfriends and that Jordan called both of them "whores," threatened to kill both victims, ripped off the victims' clothing, choked both victims, put a knife to the throat of both victims, asserted that the victims or their bodies were his alone, and sexually assaulted both victims violently. Thus, the trial court's factual findings regarding similarity of the two transactions are not clearly erroneous. The similar transaction was relevant to Jordan's course of conduct of taking violent actions with his ex-girlfriends when they refuse to continue the relationship and his bent of

---

[3] Jordan was tried in 2009 under Georgia's old Evidence Code, which allowed similar transaction evidence to be admitted for the purposes, among others, of showing the defendant's bent of mind or course of conduct. See *Matthews v. State*, 294 Ga. 50, 52 (3) (a), n. 2 (751 SE2d 78) (2013). "Georgia's new Evidence Code, which applies to trials conducted after January 1, 2013, see Ga. L.2011, p. 99, § 101, allows admission of 'evidence of other crimes, wrongs, or acts' for purposes 'including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' OCGA § 24–4–44 (b)." Id.

mind controlling and sexually assaulting them at knifepoint. Therefore the trial court did not abuse its discretion in admitting the similar transaction evidence.

*Judgment affirmed in part and reversed in part, and case remanded with direction. Barnes, P. J., and Boggs, J., concur.*