**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**February 11, 2015**

# In the Court of Appeals of Georgia

A14A1764. CHYNOWETH v. THE STATE.

BOGGS, Judge.

A jury found John Steven Chynoweth guilty on one count each of riot in a penal institution and felony obstruction of a law enforcement officer. Following the denial of his amended motion for new trial, Chynoweth appeals, asserting multiple claims of error. We affirm his convictions, but we vacate the sentence and remand this case for resentencing.

Construed in favor of the verdict, the evidence showed that on March 15, 2012, two detention officers removed Chynoweth from his jail cell to transport him for a "bond hearing inside the jail." The first officer, Officer Pimentel, instructed Chynoweth to place his hands on a table so that the officer could place chain restraints on him. When the officer reached around Chynoweth "to grab ahold of the

chains . . . to chain him up, . . . Chynoweth turns very quickly, brings a hook, swings at [him]." Chynoweth took a swing at the officer in a "fast manner," "turned very quckly . . . . He's bringing a hand. He's punching. He's making a punching motion as he is turning full speed, full body put into it," and used a "[c]losed fist." As Chynoweth did so, the officer "ducked his punch." The second officer then grabbed Chynoweth and took him to the ground. Chynoweth struggled and fought with the officers, but was eventually subdued after being tased twice.

Officer Pimentel testified that a few months after the incident, he encountered Chynoweth again and told him: "there is no grudge. There is[sic] no hard feelings for what happened. And I just told him that, you know, as easy as we can make this for the rest of our time and we all go home safe . . . you know, well, let's work it to that goal." He explained that Chynoweth agreed with him and said, "Sorry for what happened."

The State sought to admit, and the trial court allowed, evidence of a subsequent act to show Chynoweth's intent and the absence of mistake or fact. In the subsequent act, an inmate testified that on July 1, 2013 (more than two months prior to trial) he and a second inmate entered a holding cell occupied by Chynoweth. Chynoweth engaged in conversation with the two men, but after some time, the first inmate

2

noticed that Chynoweth "sort of leaned forward and looked past me, and he made direct comments to [the second inmate]." The second inmate also noticed that Chynoweth "just really didn't acknowledge [the first inmate] much." Suddenly, Chynoweth came across the cell and attacked the first inmate. The inmate testified that "he was in my face with his hands around my neck, headbutting me, and hurling me to the floor . . . . I looked up and saw him glaring down at me. And I asked him, What in the world happened? What is this all about? And he just glared at me. Really, his teeth were gritting, and he said, [b]lack b[-----]d." After the second inmate picked him up from the floor, the first inmate began to adjust his glasses when Chynoweth came "through the air again, the same thing, and I am down on the floor." The second inmate then began kneeing or kicking Chynoweth in an effort to protect the first inmate.

Testimony was presented that in February 2012, a month prior to the incident with the officers, Chynoweth had overdosed on methamphetamine and was psychotic. There was also evidence that after Chynoweth was tased by the officers on March 16, 2012, he was taken for a medical examination, after which he was prescribed antipsychotic medication. He was then sent to a mental health facility, where on

3

March 28, 2012, a forensic psychologist concluded that Chynoweth required inpatient hospitalization.

Before trial, Chynoweth requested jury instructions on "lack of mental capacity," "defense of delusional compulsion," and "mentally ill." The trial court instructed the jury on "voluntary intoxication," "insanity at time of commission of offense," "insanity at time of act," "mentally ill at time of alleged act," and "mentally retarded."[1] The jury found Chynoweth guilty of both riot in a penal institution and felony obstruction of an officer, and the trial court merged the obstruction conviction with the riot conviction and sentenced him to 20 years to serve.

1. Chynoweth contends that the evidence was insufficient to sustain his conviction for riot in a penal institution. Specifically, he argues that there was no evidence that he committed an act in a tumultuous manner. The indictment charged Chynoweth with "commit[ting] an act in a violent *and* tumultuous manner, to wit: swing his fist at Officer [ ] Pimentel." But OCGA § 16-10-56 (a) provides: "Any person legally confined to any penal institution of this state or of any political subdivision of this state who commits an unlawful act of violence or any other act in

---

[1]Prior to trial, Chynoweth's former counsel filed a "notice of intent to raise issue of insanity, mental illness or mental retardation."

4

a violent *or* tumultuous manner commits the offense of riot in a penal institution." (Emphasis supplied.) As we have previously held,

> [w]hen an indictment charges a crime was committed in more than one way, proof that it was committed in one of the separate ways or methods alleged in the indictment makes a prima facie case for jury determination as to guilt or innocence. It is sufficient for the State to show that a crime was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form.

(Citations, punctuation and footnote omitted.) *Slinkard v. State*, 259 Ga. App. 755, 759-760 (2) (577 SE2d 825) (2003). Chynoweth could therefore be convicted if the evidence showed that he committed an act in a violent manner *or* in a tumultuous manner. The evidence presented, that Chynoweth swung his fist at Officer Pimentel, was sufficient to sustain his conviction for riot in a penal institution for committing an act in a violent manner under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See *Strapp v. State*, 326 Ga. App. 264, 265 (1) (a) (756 SE2d 333) (2014). Chynoweth's argument here, with regard to a lack of evidence of an act committed in a tumultuous manner, is therefore unavailing.

2. Chynoweth argues that he should have been sentenced to the lesser penalty of between 1 and 5 years for felony obstruction.

As the Georgia Supreme Court has explained,

> The Supreme Court of the United States has referred to the rule of lenity "as a sort of 'junior version of the vagueness doctrine,' " which requires fair warning as to what conduct is proscribed. The rule of lenity applies when a statute, or statutes, establishes, or establish, different punishments for the same offense, and provides that the ambiguity is resolved in favor of the defendant, who will then receive the lesser punishment. However, the rule does not apply when the statutory provisions are unambiguous. The rule of lenity is a rule of construction that is applied only when an ambiguity still exists after having applied the traditional canons of statutory construction.

(Citations and punctuation omitted.) *McNair v. State*, 293 Ga. 282, 283-284 (745 SE2d 646) (2013). Chynoweth's act of swinging his fist at the deputy satisfied the elements of both riot in a penal institution, OCGA § 16-10-56 (a), and obstruction of a law enforcement officer by offering violence, OCGA § 16-10-24 (b), both felonies. The punishment for riot in a penal institution is from 1 to 20 years, OCGA § 16-10-56 (b), while the punishment for felony obstruction is from 1 to 5 years, OCGA § 16-10-24 (b), and the trial court sentenced Chynoweth to 20 years to serve after merging the obstruction conviction into the riot conviction.

OCGA § 16-10-56 (a) prohibits an unlawful act of violence or any other act committed in a violent or tumultuous manner while confined to a penal institution,

6

while OCGA § 16-10-24 (b) prohibits knowingly and willfully resisting or opposing any law enforcement officer in the discharge of his duties by offering or doing violence. Riot prohibits the above-described acts against anyone generally, not only law enforcement officers, while obstruction can occur outside of a penal institution and involves acts of violence against law enforcement officers only. These two statutes do not define the same offense and are unambiguous. See *Banta v. State*, 281 Ga. 615, 617-618 (2) (642 SE2d 51) (2007). Because "the two defined crimes do not address the same criminal conduct, there is no ambiguity created by different punishments being set forth for the same crime, and the rule of lenity does not apply." Id. at 618 (2); see *Snow v. State*, 318 Ga. App. 131, 134-135 (2) (733 SE2d 428) (2012); compare *McNair v. State*, 326 Ga. App. 516, 521-522 (757 SE2d 141) (2014) (neither financial transaction theft nor identity theft, as charged, requires proof of any fact the other does not; because statutes provide different grades of punishment for same criminal act, defendant entitled to rule of lenity).

"Nevertheless, as set forth in *Hulett v. State*, 296 Ga. 49, 54 (2) (___ SE2d ___) (2014), if this Court notices a merger error in an appeal we may correct the error even if it was not raised on appeal.[Cit.]" *Grissom v. State*, ___ Ga. ___ (1) (Case No. S14A1431, decided January 20, 2015). Felony obstruction does not merge with riot

7

in a penal institution because each crime is established by proof of different facts. See id. (merger applies where "conviction for one of the offenses is established by proof of the same or less than all facts required to establish the other crime pursuant to OCGA § 16-1-6 (1)"). The trial court therefore erred in merging the felony obstruction conviction into the riot in a penal institution conviction. Regardless of the lengthy sentence originally imposed, we are nevertheless constrained to vacate Chynoweth's sentence and remand this case for resentencing. See *Hulett*, supra, 296 Ga. at 54 (2) ("The merger issues that this Court decides sua sponte typically result in vacated convictions and sentences and thus are favorable to the defendant.")

3. Chynoweth contends that the trial court erred in allowing the evidence of his unprovoked attack on a cellmate that occurred more than two months prior to trial. Because this case was tried after January 1, 2013, Georgia's new Evidence Code applies here. See Ga. L. 2011, p. 99, § 101. "The new Code adopted, in large measure, the Federal Rules of Evidence, and its sections are comparable to corresponding federal rules. Because of this similarity, it is proper that we give consideration and great weight to constructions placed on the Federal Rules by the federal courts." (Citation, punctuation and footnotes omitted.) *Jones v. State*, 326 Ga. App. 658, 660 (1) (757 SE2d 261) (2014), cert. granted, 2014 Ga. LEXIS 706.

8

The record reveals that the trial court allowed this evidence for the purpose of showing Chynoweth's intent and the absence of mistake or accident. These are permissible purposes under OCGA § 24-4-404 (b) (evidence of other crimes or acts admissible for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident").

> The Eleventh Circuit utilizes a three-part test for evidence of other crimes or acts to be admissible pursuant to Federal Rule of Evidence 404 (b): (1) it must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Federal Rule of Evidence 403.

(Citations, punctuation and footnote omitted.) Id. "A trial court's ruling to admit evidence of a similar transaction is reviewed under an abuse of discretion standard, but factual findings are accepted unless clearly erroneous. Accordingly, we will not disturb the findings on the issue of similarity or connection of similar transaction evidence unless the finding is clearly erroneous." (Citations and punctuation omitted.) *Jordan v. State*, 328 Ga. App. 462, 466 (3) (762 SE2d 157) (2014).

9

Chynoweth argues that the subsequent act served only "to show a general propensity for violence." The trial court found that the act was "relevant to the issue of intent, particularly with the notice of intent to raise the defense of insanity." "The relevance of other crimes evidence to intent is determined by comparing the defendant's state of mind in committing both the extrinsic and charged offenses. Where the state of mind required for both offenses is the same, the extrinsic crime is relevant to the charged offense." (Citations and punctuation omitted.) *United States v. Zapata*, 139 F3d 1355, 1358 (11th Cir. 1998). The question is "whether intent is an issue in the case." Paul S. Milich, Ga. Rules of Evidence, § 11:13 p. 320 (2014-2015). As Professor Milich explains, "The test is to ask: under the facts of the case, is there *any* danger that a rational jury could find that although the defendant committed the objective, charged acts, he did not intend to do so?" (Emphasis in original.) Id. at p. 321.

While Chynoweth asserts that the defense of insanity "never materialized," there was evidence presented that he had earlier been prescribed antipsychotic medication, overdosed on methamphetamine, and had been sent to a mental health facility for evaluation. And he requested jury instructions concerning lack of mental capacity and mentally ill, while the trial court gave various instructions on mental

illness and insanity. This was sufficient to raise an issue concerning his state of mind, and it created a danger that a jury could have concluded that while he committed the charged act, he did not intend to do so. See Milich, supra at 321. Intent is therefore at issue in this case. *Zapata*, supra, 139 F3d at 1358. The subsequent act of attacking a cellmate without warning is therefore probative of his criminal intent in the crime charged, and the trial court did not err in allowing it for that purpose.[2] Id.

4. Chynoweth argues that the trial court erred in failing to charge misdemeanor obstruction (obstructing or hindering a law enforcement officer in the lawful discharge of his duties), as a lesser-included offense of felony obstruction (knowingly and willfully resisting, obstructing or opposing a law enforcement officer in the lawful discharge of his duties by offering or doing violence). OCGA § 16-10-24 (a) and (b). "While misdemeanor obstruction is a lesser included offense of felony obstruction, where the evidence shows completion of the greater offense, it is not necessary for the court to charge on a lesser included offense." (Citations and

---

[2]Although the trial court also ruled that the subsequent act was admissible to show absence of mistake or accident, see OCGA § 24-4-404 (b), we make no ruling here with regard to whether such ruling was proper. And we reject Chynoweth's assertion that the subsequent act should not have been admitted because of the racial epithet he used towards the inmate victim. See *Greene v. State*, 274 Ga. 220, 221 (2) (552 SE2d 834) (2001).

11

punctuation omitted.) *White v. State*, 310 Ga. App. 386, 390-391 (3) (714 SE2d 31) (2011). Both officers testified that Chynoweth aggressively and quickly made a punching motion with a closed fist at Officer Pimentel, and then began to struggle with and fight the officers as they attempted to transport him from the jail. Because this evidence showed the completion of the offense of felony obstruction - resisting, obstructing or opposing an law enforcement officer in the discharge of his official duties by offering or doing violence - the trial court was not required to instruct the jury on the lesser included offense of misdemeanor obstruction. See *Carlson v. State*, 329 Ga. App. 309, 312 (3) (764 SE2d 890) (2014); *White*, supra.

*Judgment affirmed, sentence vacated, and case remanded for resentencing. Barnes, P. J., and Branch, J., concur*.