**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

_**DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.**_

**February 2, 2021**

# In the Court of Appeals of Georgia

A20A1928. PRESLEY v. THE STATE.                                        DO-067 C

DOYLE, Presiding Judge.

Zechariah Presley was accused in an indictment of committing voluntary manslaughter, involuntary manslaughter, and violation of oath by a public officer. Following a jury trial, he was found guilty of the violation of oath charge and found not guilty of the two manslaughter counts. He now appeals from the denial of his motion in arrest of the judgment, contending that the trial court erred because (1) his conviction was unlawfully augmented from the narrowly drawn indictment without support from the evidence, and (2) his conviction is not subject to the abolition of the inconsistent verdict rule, pursuant to _Turner v. State_.[1] For the reasons that follow, we affirm.

---

[1] 283 Ga. 17 (655 SE2d 589) (2008).

At Presley's trial, there was evidence showing that in June 2018, Presley was employed as a police officer with the Kingsland Police Department. While he was in uniform on duty during an overnight shift, he encountered a vehicle driven by Tony Green, whom he knew from an encounter a few months earlier. The vehicle was parked in a store parking lot, and Presley had learned in the prior encounter that Green's license was suspended, so he believed that Green might have been driving while his license was suspended. Presley entered the store and began to observe Green, planning to ask whether his license had been restored, but he noticed that Green "seemed off that night." Green noticed Presley, "rushed" back to his vehicle, and drove away, screeching his tires in the process. Presley followed Green and used his radar to clock Green's speed at "53 or 55" in a 35-mile-per-hour speed limit zone.

Presley activated his police lights and attempted to stop Green, and Green's vehicle "left the roadway, went into a ditch, and crashed into some . . . trees." As Presley brought his police cruiser to a stop, he was surprised to see that Green had a passenger, and Presley grew worried as the two men quickly exited the vehicle. The passenger ran into the woods, and Green initially fled but immediately returned to the vehicle to retrieve "a small dark object" that Presley could not see clearly in the darkness. Presley reported the situation to dispatch and began pursuing Green on foot.

2

Presley shouted commands for Green to stop, but Green ignored them and kept running. After chasing Green for a few hundred yards, Presley fired his taser at Green; the taser leads did not discharge, and Presley realized that it had malfunctioned.[2] During this interaction, Green fell to the ground, and Presley approached and attempted to push him flat to the ground to handcuff him. Green resisted and knocked Presley onto his back, and as the two men continued to struggle, Presley was tased in his arm.[3] Presley felt Green grab at his duty belt and as he attempted to tase Green, Green knocked it out of his hands. Presley then reached for his firearm, and Green got off of Presley and began to run away toward their vehicles, briefly out of Presley's line of vision. Upon locating Green, Presley fired at him several times, killing him. Presley testified at trial that Green had his arm "pointed outward toward me," that he feared for his safety because Green had retrieved something from his vehicle, and that he had observed Green reaching toward his waistband during the chase. Trial evidence showed that Green was shot in the chest,

[2] The air cartridge that propels the taser leads had apparently fallen out of the taser during the foot chase.

[3] Presley explained at trial that the taser can operate through contact or by firing leads through the air.

hip, forearm, and back. Green was unarmed and holding only a cell phone when Presley shot him.

Based on Presley's shooting of Green, a grand jury returned a true bill of indictment charging Presley with voluntary manslaughter, involuntary manslaughter based on reckless conduct, and violation of oath by a public officer. The indictment read as follows:

> Zechariah Presley [was accused of] . . . voluntary manslaughter] for that [he] . . . cause[d] the death of [Green] . . . while acting solely as the result of a sudden, violent, and irresistible passion, resulting from serious provocation sufficient to excite such passion in a reasonable person, in that Zechariah Presley did physically struggle with [Green] in an attempt to arrest and detain [Green] seconds prior to firing a .40 caliber pistol at [Green]. . . .

> Zechariah Presley [is accused of] . . . involuntary manslaughter for that [he] . . . , while in the commission of reckless conduct, . . . cause[d] the death of [Green] . . . without any intention to do so, to wit: [Presley] did unlawfully cause bodily harm to and endanger the safety of [Green] by consciously disregarding a substantial and unjustifiable risk that his act of firing a .40 caliber pistol in the direction of [Green] would cause harm to and endanger the safety of [Green] and the disregard constituted a gross deviation from the standard of care which a reasonable person would exercise in the situation, and said act did result in the death of [Green]. . . .

Zechariah Presley [is accused of] . . . violation of oath by public officer for that [Presley] . . . , being a public officer with the City of Kingsland Police Department[,] . . . did willfully and intentionally violate the terms of his oath as prescribed by law, in that he did swear to discharge the duties of a sworn law enforcement officer . . . to the best of his skill and ability, and obey the laws and constitution of the State of Georgia and the United States and then did unlawfully and without legal justification, did discharge his firearm in the direction of [Green].

Following a jury trial, Presley was acquitted of the two manslaughter counts and convicted of the violation of oath count. Presley filed motions for judgment notwithstanding the verdict, to set aside the guilty verdict, and in arrest of the judgment. Following a hearing, the trial court denied the motions, and Presley now appeals that order.

1. Presley contends that the trial court erred by denying his motion in arrest of judgment in light of the fact that the jury acquitted him of the manslaughter counts but convicted him of violating his oath as a public officer. Specifically, Presley argues that the conviction was inconsistent and augmented the narrowly drawn indictment in a way not supported by the evidence. Simply put, Presley argues that the third count was necessarily premised on the manslaughter counts, so he could not

5

be convicted of that count after being acquitted of those counts. We discern no basis for reversal on this ground.

Presley relies on *Watson v. State*,[4] which involved an officer accused of violating his oath of office based on an alleged solicitation of sodomy after giving a 17-year-old bystander a ride home.[5] Watson was convicted of both counts and appealed, challenging the constitutionality of the sodomy statute and the sufficiency of the evidence.[6] The Supreme Court of Georgia reaffirmed that the sodomy statute was constitutional only insofar as it addressed sodomy that was "to be performed (a) in public; (b) in exchange for money or anything of commercial value; (c) by force; or (d) by or with an individual who is incapable of giving legal consent to sexual activity."[7] The evidence in that case revealed that none of these conditions existed, so the evidence was not sufficient to support a conviction for solicitation of sodomy. And, pertinent to the case before us, the Court held that Watson's violation of oath conviction was unsupported because that count of the indictment was expressly

---

[4] 293 Ga. 817 (750 SE2d 143) (2013).

[5] See id. at 818.

[6] See id.

[7] Id. at 820 (1).

conditioned on soliciting sodomy: "said accused . . . did . . . willfully and intentionally violate the terms of his sworn oath to comply with the laws of the State of Georgia by soliciting sodomy in violation of 16-6-15 (a). . . ."[8] In light of this, the Court explained that if "the defendant is charged by a narrowly drawn indictment with a specific crime[,] it is not within the power of the judge or the jury to interpret the facts as presented at trial to support an alternative, separate offense."[9] In other words, the evidence showed that Watson did not commit the solicitation of sodomy offense (as that offense was construed by the Court), so he could not have violated his oath by soliciting sodomy as alleged in the indictment.

Based on *Watson*, Presley argues that the jury acquitted him of both manslaughter counts presumably because the jury found that he was justified in shooting Green. Therefore, according to Presley, the guilty verdict as to his violation of oath count is inconsistent with the acquittal on the manslaughter counts.

"As a general rule, inconsistent verdicts occur when a jury in a criminal case renders seemingly incompatible verdicts of guilty on one charge and not guilty on

---

[8] Id. at 822 (3).

[9] Id. at 823 (3), quoting *State v. Hightower*, 252 Ga. 220, 223 (312 SE2d 610) (1984).

7

another. In Georgia, [however], we have abolished the rule that inconsistent verdicts require reversal."[10] This is because if

> truly inconsistent verdicts have been reached, the most that can be said is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. . . . [I]nconsistent verdicts — *even verdicts that acquit on a predicate offense while convicting on the compound offense* — should not necessarily be interpreted as a windfall to the [State] at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [predicate] offense.[11]

In this context, Georgia's appellate courts

> have determined it is not generally within the court's power to make inquiries into the jury's deliberations, or to speculate about the reasons for any inconsistency between guilty and not guilty verdicts. . . .

---

[10] *McElrath v. State*, 308 Ga. 104, 108 (2) (a) (839 SE2d 573) (2020).

[11] (Citation and punctuation omitted; emphasis supplied.) Id., quoting *United States v. Powell*, 469 U. S. 57, 64-65 (105 SCt 471, 83 LE2d 461) (1984).

[A]ppellate courts cannot know and should not speculate why a jury acquitted on one offense and convicted on another offense.[12]

Because of this, "the issue is not whether an acquittal on one charge would logically necessitate acquittal on another charge on which the jury convicted the defendant; rather *the sole question is whether the evidence viewed in favor of the conviction was sufficient to support the guilty verdict.*"[13]

Here, there was evidence that Presley shot Green after Green had disengaged Presley and had begun retreating back to the area where the vehicles were parked. This evidence authorized a guilty finding even in the face of Presley's asserted justification defense,[14] so it is entirely possible that the jury found that the shooting was unlawful but out of lenity or compromise due to Presley's status as a police officer, the jury as a whole agreed to acquit him of the more serious manslaughter offenses. On the other hand, it is also possible that the jury simply erred. But

---

[12] (Punctuation omitted.) *McElrath*, 308 Ga. at 109 (2) (a), quoting *King v. Waters*, 278 Ga. 122 (1) (598 SE2d 476) (2004), and citing *Dumas v. State*, 266 Ga. 797 (2) (471 SE2d 508) (1996).

[13] (Punctuation omitted; emphasis supplied.) *Houseworth v. State*, 348 Ga. App. 119, 124 (1) (c) (820 SE2d 231) (2018).

[14] See id.

engaging in this type of speculation is exactly the type of epistemological futility that our precedent forbids. As our Supreme Court has said, "it is imprudent and unworkable to allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them."[15] Accordingly, in light of the evidence supporting the guilty verdict as to the violation of oath count, the fact that the jury in this case acquitted Presley on the predicate manslaughter offenses does not require reversal of his violation of oath offense.

2. Presley contends that the allegedly inconsistent verdict nevertheless requires reversal in this case pursuant to *Turner v. State*.[16] In that case, the Supreme Court of Georgia described an exception to the above analysis:

> [W]hen instead of being left to speculate about the unknown motivations of the jury the appellate record makes transparent the jury's reasoning

---

[15] *Turner*, 283 Ga. at 20 (2), quoting *Powell*, 469 U. S. at 66. See also *Allen v. State*, 351 Ga. App. 680, 683 (832 SE2d 659) (2019) ("[A] jury has an 'unreviewable power' to render verdicts, including inconsistent verdicts, for 'impermissible reasons.' Those reasons may include a mistake, compromise, or lenity."), quoting *Thornton v. State*, 298 Ga. 709, 713 (2) (784 SE2d 417) (2016).

[16] 283 Ga. at 20-21 (2).

why it found the defendant not guilty of one of the charges, there is no speculation, and the policy [described above] . . . does not apply.[17]

In *Turner*, the defendant was accused of a shooting and charged with malice murder, felony murder (aggravated assault), and aggravated assault.[18] The defendant admitted shooting the victim but asserted a justification defense.[19] The jury found the defendant not guilty on the malice murder charge, "expressly finding pursuant to the jury verdict form supplied to it that [Turner] had been justified in his action."[20] The jury also found the defendant guilty of the felony murder charge and the underlying aggravated assault charge, making an express finding that the shooting was *not justified*.[21] Turner appealed, and in light of the inherent contradiction in the jury's explicit findings as to justification, the Supreme Court of Georgia held that "there is no speculation" as to the basis for the jury's inconsistent verdicts, so "the rules

---

[17] (Punctuation omitted.) Id.

[18] See id. at 17.

[19] See id.

[20] Id.

[21] See *Turner*, 283 Ga. at 17.

11

regarding inconsistent verdicts are not applicable to the case at bar."[22] Therefore, the Court held that it was error for the trial court to enter judgment on the guilty verdicts as to felony murder and aggravated assault.

Presley contends that the same result is required here. But Presley's case is different from *Turner* because the verdict form in this case provides no insight into the jury's finding with respect to justification. As noted above, *Turner* makes it clear that its reasoning only applies if "the appellate record makes transparent the jury's reasoning why it found the defendant not guilty of one of the charges," and in *Turner*, the verdict form contained express findings as to justification.[23] "But there is no such verdict form in this case, and this [C]ourt will not engage in speculation or unauthorized inquiry regarding the jury's deliberations."[24] Accordingly, despite Presley's argument otherwise, the record does not require reversal based on an allegedly inconsistent verdict.

*Judgment affirmed. McFadden, C. J., and Hodges, J., concur.*

---

[22] (Punctuation omitted.) Id. at 21 (2).

[23] Id. at 21 (2).

[24] *Jones v. State*, 318 Ga. App. 105, 106 (1) (733 SE2d 407) (2012), quoting *Guajardo v. State*, 290 Ga. 172, 175 (2) (718 SE2d 292) (2011).