S11A1960. FINAL EXIT NETWORK, INC. et al. v. STATE OF GEORGIA.
(722 SE2d 722)

THOMPSON, Justice.

In 1994, the Georgia legislature enacted OCGA § 16-5-5 (b), which provides that any person "who publicly advertises, offers, or holds himself or herself out as offering that he or she will intentionally and actively assist another person in the commission of suicide and commits any overt act to further that purpose is guilty of a felony." Violation of the statute is punishable by imprisonment for not less than one nor more than five years. OCGA § 16-5-5 (b). The issue in this case is whether OCGA § 16-5-5 (b) is constitutional under the free speech clauses of the federal and state constitutions.

Appellants Final Exit Network, Inc. ("FEN"), Thomas Goodwin, Lawrence Egbert, Nicholas Sheridan, and Claire Blehr were indicted in March 2010 by a Forsyth County grand jury on charges of, inter alia, offering to assist and assisting in the commission of suicide in violation of OCGA § 16-5-5 (b). Appellants pled not guilty and filed demurrers and motions to dismiss the OCGA § 16-5-5 (b) charges on the ground that the statute was unconstitutional on its face in violation of several constitutional provisions, including the free speech clauses of the United States[1] and Georgia Constitutions.[2] The trial court denied the motions but granted appellants a certificate of immediate review. We granted appellants' application for interlocutory appeal to consider their constitutional challenges. Because we conclude OCGA § 16-5-5 (b) is unconstitutional under the free speech clauses of both constitutions, we reverse.

1. "As a general matter . . . government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." (Punctuation omitted.) *Ashcroft v. American Civil Liberties Union*, 535 U. S. 564, 573 (122 SC 1700, 152 LE2d 771) (2002). By its plain language, however, OCGA § 16-5-5 (b) proscribes speech

---

[1] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and petition the government for a redress of grievances." U. S. Const., Amendment 1.

[2] Article I, Section I, Paragraph V of the 1983 Georgia Constitution provides: "No law shall be passed to curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish sentiments on all subjects but shall be responsible for the abuse of that liberty."

based on content in that it restricts anyone who "publicly advertises, offers, or holds himself or herself out as offering that he or she will intentionally and actively assist another person in the commission of suicide." It is not all assisted suicides which are criminalized but only those which include a public advertisement or offer to assist. This distinction takes the statute out of the realm of content neutral regulations and renders it a selective restraint on speech with a particular content. See *Ward v. Rock Against Racism*, 491 U. S. 781, 791 (109 SC 2746, 105 LE2d 661) (1989) ("The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of a disagreement with the message it conveys.").

2. As a content based restriction on speech, OCGA § 16-5-5 (b) will stand only if it satisfies a strict level of constitutional scrutiny. *United States v. Playboy Entertainment Group*, 529 U. S. 803, 813 (120 SC 1878, 146 LE2d 865) (2000); *McKenzie v. State*, 279 Ga. 265, 267 (626 SE2d 77) (2005). Under the strict scrutiny test, a statute is deemed unconstitutional unless the State can demonstrate it is justified by a compelling interest and is narrowly drawn to serve that interest. *Brown v. Entertainment Merchants Assn.*, ___ U. S. ___ (131 SC 2729, 2738, 180 LE2d 708) (2011). "The State must specifically identify an 'actual problem' in need of solving, [cit.], and the curtailment of free speech must be actually necessary to the solution, [cit.] That is a demanding standard. 'It is rare that a regulation restricting speech because of its content will ever be permissible.' [Cit.]" Id.

The State contends OCGA § 16-5-5 (b) was intended to "criminalize assisted suicide in certain instances" and that the statute's restriction on speech is justified by the State's "compelling interest in preventing suicide." While a State's interest in preserving human life would be compelling, OCGA § 16-5-5 (b) is not narrowly tailored to promote this asserted interest. See *Washington v. Glucksberg*, 521 U. S. 702, 728-729 (117 SC 2258, 138 LE2d 772) (1997) (assisted suicide ban is an expression of State's commitment to protection of human life). Although the State attempts to portray OCGA § 16-5-5 (b) as simply a ban on assisted suicide, the clear language of the statute demonstrates otherwise. It is undisputed that OCGA § 16-5-5 (b) does not ban assistance in all suicides, conduct which by itself is legal in Georgia. Many assisted suicides are either not prohibited or are expressly exempted from the ambit of OCGA § 16-5-5 (b)'s criminal sanctions. See OCGA § 16-5-5 (d). Nor does OCGA § 16-5-5 (b) render illegal all advertisements or offers to assist in a suicide. Individuals who offer to assist in the commission of a suicide in a less than "public" manner are not covered, despite the fact that such communication might have the same consequences as a public offer.

Rather, as the State admits, OCGA § 16-5-5 (b) was carefully drafted and intentionally enacted for the purpose of preventing a "Dr. Kevorkian type actor" from offering to assist in suicide while leaving others free to do so. See Charles F. Fenton, Crimes Against the Person: Provide for the Criminal Offense of Offering to Assist in the Commission of Suicide and Committing an Act in Furtherance Thereof, 11 Ga. St. U. L. Rev. 103 (1994) (available at: http://digitalarchive.gsu.edu /gsulr/vol11/iss1/8). "The consequence is that its regulation is wildly underinclusive when judged against its asserted justification, which in our view is alone enough to defeat it." *Brown,* supra, 131 SC at 2740. See *City of Ladue v. Gilleo,* 512 U. S. 43, 51 (114 SC 2038, 129 LE2d 36) (1994); *Florida Star v. B. J. F.,* 491 U. S. 524, 540 (109 SC 2603, 105 LE2d 443) (1989); *Cunningham v. State,* 260 Ga. 827, 832 (400 SE2d 916) (1991) (recognizing First Amendment implications of underinclusive statute).

The State argues OCGA § 16-5-5 (b) is narrowly tailored because it reaches only those who publicly offer to assist in suicide and then, in fact, undertake an overt act to accomplish that goal. Had the State truly been interested in the preservation of human life, however, it could have imposed a ban on all assisted suicides with no restriction on protected speech whatsoever. Alternatively, the State could have sought to prohibit all offers to assist in suicide when accompanied by an overt act to accomplish that goal. The State here did neither. While courts

> frequently ha[ve] upheld underinclusive classifications on the sound theory that a legislature may deal with one part of a problem without addressing all of it, . . . "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." [Cit.]

*Erznoznik v. Jacksonville,* 422 U. S. 205, 215 (95 SC 2268, 45 LE2d 125) (1975). "Thus, 'under the . . . First Amendment itself', . . . a [statute] cannot discriminate on the basis of content unless there are clear reasons for the distinctions." Id. The State has failed to provide any explanation or evidence as to why a public advertisement or offer to assist in an otherwise legal activity is sufficiently problematic to justify an intrusion on protected speech rights. Absent a more particularized State interest and more narrowly tailored statute, we hold the State may not, consistent with the United States and Georgia Constitutions, make the public advertisement or offer to assist in a suicide a criminal offense.[3]

---

[3] In this regard, OCGA § 16-5-5 (b) is distinguishable from the statute upheld in

3. A statute will not be deemed facially invalid "unless it is not readily subject to a narrowing construction . . . and its deterrent effect on legitimate expression is both real and substantial." (Citations omitted.) *Erznoznik*, supra, 422 U. S. at 216. See *Gravely v. Bacon*, 263 Ga. 203, 206 (429 SE2d 663) (1993). In this case, both the object and plain language of OCGA § 16-5-5 (b) make it insusceptible to a limiting construction. We will not rewrite a law "to conform it to constitutional requirements." *Virginia v. American Booksellers Assn.*, 484 U. S. 383, 397 (108 SC 636, 98 LE2d 782) (1988). Accordingly, we conclude OCGA § 16-5-5 (b) restricts speech in violation of the free speech clauses of both the United States and Georgia Constitutions. The order of the trial court holding otherwise is hereby reversed.

4. Because we conclude OCGA § 16-5-5 (b) is unconstitutional under the free speech provisions of the United States and Georgia Constitutions, we do not consider appellants' other constitutional challenges.

*Judgment reversed. Hunstein, C. J., Carley, P. J., Benham, Hines, and Melton, JJ., and Judge Christopher S. Brasher concur. Nahmias, J., disqualified.*

DECIDED FEBRUARY 6, 2012.

*Bruce S. Harvey, Peters, Rubin & Sheffield, Robert G. Rubin, Garland, Samuel & Loeb, Donald F. Samuel, L. David Wolfe, Sachs, Sax & Caplan, Robert Rivas*, for appellants.

*Penny A. Penn, District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.

---

*Christensen v. State*, 266 Ga. 474 (468 SE2d 188) (1996), which contained a similar solicitation element. The defendant in *Christensen* violated a statute by soliciting sodomy, itself a crime under Georgia law. Id. at 476. We held in *Christensen* that "[b]ecause First Amendment protection does not extend to statements made in the solicitation of criminal acts," the statute at issue did not reach protected speech. Id. In contrast, assisted suicide is not a criminal activity, and First Amendment protections extend to statements made offering to assist in the commission of a suicide. See *United States v. Stevens*, ___ U. S. ___ (130 SC 1577, 176 LE2d 435) (2010) (recognizing permissible restrictions on free speech have been limited to obscenity, defamation, fraud, incitement, and speech integral to criminal conduct).