In the Supreme Court of Georgia

Decided: July 5, 2016

S16A0323. SCOTT v. THE STATE.

HUNSTEIN, Justice.

This interlocutory appeal presents a facial constitutional challenge to subsection (e) of the Computer or Electronic Pornography and Child Exploitation Prevention Act, OCGA § 16-12-100.2, which criminalizes the offense of "obscene Internet contact with a child." Appellant Jack Scott was indicted in January 2015 on two counts of that offense, arising from alleged sexually explicit online communications in which he took part in late 2013 with a minor under the age of 16. Scott thereafter filed a general demurrer, contending that OCGA § 16-12-100.2 (e) is unconstitutionally overbroad in violation of the right to free speech guaranteed under the First Amendment to the United States Constitution.[1] The trial court denied the demurrer but granted Scott a certificate of immediate review. Scott filed an application for

[1]Scott's general demurrer also cited the Georgia Constitution's free speech clause, see Ga. Const. of 1983, Art. 1, Sec. 1, Par. 5, and raised an additional challenge under the so-called "Dormant Commerce Clause."

interlocutory appeal, and we granted the application only to review the merits of his First Amendment overbreadth challenge. We now hold that, when properly construed, subsection (e) does not effect a real and substantial constraint upon constitutionally protected expression. Subsection (e) therefore does not on its face violate the First Amendment, and the trial court properly denied Scott's demurrer. Accordingly, we affirm.

1. In general, "[t]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Ashcroft v. American Civil Liberties Union, 535 U.S. 564, 573 (122 SCt 1700, 152 LE2d 771) (2002); accord Final Exit Network, Inc. v. State of Georgia, 290 Ga. 508 (1) (722 SE2d 722) (2012). Though American jurisprudence has recognized a few narrowly defined forms of expression that are categorically excluded from First Amendment protection, see United States v. Alvarez, 132 S.Ct. SCt 2537, 2544 (183 LE2d 574) (2012) (enumerating categories of historically unprotected speech, such as defamation, obscenity, and fraud), laws purporting to prohibit or regulate speech falling outside those narrow bounds on the basis of its content are subject to "exacting scrutiny." Id. at 2548. To be valid, such laws "must be narrowly drawn and represent a

2

considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." Broadrick v. Oklahoma, 413 U.S. 601, 611 (93 SCt 2908, 37 LE2d 830) (1973). Accord State v. Fielden, 280 Ga. 444, 445 (629 SE2d 252) (2006) ("'(b)ecause First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.'").

To maintain the requisite "breathing space" and avoid deterring expression that may tend towards the outer boundaries of what is protected, the First Amendment overbreadth doctrine permits courts to invalidate laws burdening protected expression on their face, without regard to whether their application might be constitutional in a particular case. See United States v. Williams, 553 U.S. 285, 292 (128 SCt 1830, 170 LE2d 650) (2008); New York v. Ferber, 458 U.S. 747, 768-769 (102 SCt 3348, 73 LE2d 1113) (1982). This doctrine

> seeks to strike a balance between competing social costs. On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects.

(Citations omitted.) Williams, 553 U.S. at 292; see also Ferber, 458 U.S. 747,

3

768-769. Thus, the overbreadth doctrine, while allowing facial overbreadth challenges without regard to whether the law in question might be constitutional if applied to the litigant at hand, also erects a high bar for establishing facial overbreadth, requiring a finding that the law's overbreadth is "substantial, not only in an absolute sense, but also relative to [its] plainly legitimate sweep." Williams, 553 U.S. at 292. Accord Ashcroft v. Free Speech Coalition, 535 U.S. 257 (122 SCt 1389, 152 LE2d 403) (2002) (overbreadth doctrine "prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process."); Final Exit Network, 290 Ga. at 511 (deterrent effect on protected expression must be "real and substantial" before statute is invalidated as overbroad); State v. Miller, 260 Ga. 669, 673 (2) (398 SE2d 547) (1990) (same).

To assess the extent of a statute's effect on protected expression, a court must determine what the statute actually covers. Accordingly, the first step in any overbreadth analysis is to construe the statute in question. Williams, 553 U.S. at 293; accord United States v. Stevens, 559 U.S. 460, 474 (130 SCt 1577, 176 LE2d 435) (2010). We now undertake that step, reviewing the trial court's order de novo. Atlanta Oculoplastic Surgery, P.C. v. Nestlehutt, 286 Ga. 731

4

(2) (691 SE2d 218) (2010).

2. OCGA § 16-12-100.2 (e) (1) provides that an individual

> commits the offense of obscene Internet contact with a child if he or she has contact with someone he or she knows to be a child or with someone he or she believes to be a child via a computer wireless service or Internet service, including but not limited to, a local bulletin board service, Internet chat room, e-mail, or instant messaging service, and the contact involves any matter containing explicit verbal descriptions or narrative accounts of sexually explicit nudity, sexual conduct, sexual excitement, or sadomasochistic abuse that is intended to arouse or satisfy the sexual desire of either the child or the person, provided that no conviction shall be had for a violation of this subsection on the unsupported testimony of a child.

OCGA § 16-12-100.2 (e) (1). The crime so defined is a felony, except where the victim is at least 14 years old and the accused was 18 or younger at the time of the crime, in which case it is a misdemeanor. Id. at (e) (2).

> Under our well-established rules of statutory construction, we
>
> presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

(Citations and punctuation omitted.) Deal v. Coleman, 294 Ga. 170, 172-173 (751 SE2d 337) (2013). In our interpretation of statutes, we thus look to the text

of the provision in question, and its context within the larger legal framework,

to discern the intent of the legislature in enacting it.  See id.; OCGA § 1-3-1 (a),

(b).

Deconstructing the multifaceted substantive provisions of subsection (e)

(1), it is apparent that the actus reus of the offense at issue is the establishing of

"contact."[2]  The text of the statute is clear that, to constitute a crime, such

contact must be made with a person known or believed to be a "child," a term

defined in the statute as "any person under the age of 16 years."  OCGA § 16-

12-100.2 (b) (1).   In addition, the contact must be accomplished by way of a

computer wireless service or Internet service, and it must involve "explicit

verbal descriptions or narrative accounts" of subjects falling within any of four

categories of offending content: "sexually explicit nudity," "sexual conduct,"

"sexual excitement," or "sadomasochistic abuse."   These terms are defined

elsewhere in the Georgia Code, see id. at (b) (4) - (7), as follows:

- "Sexually explicit nudity" is defined as "a state of undress so as to expose the human male or female genitals, pubic area, or buttocks with less than

---

[2] "Contact" is not defined in the statute, so we look to its ordinary meaning: "an occurrence in which people communicate with each other."  Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/contact (website last viewed June 23, 2016).

a full opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered or uncovered male genitals in a discernibly turgid state." OCGA § 16-12-102 (7).

- "Sexual conduct" is defined as "human masturbation, sexual intercourse, or any touching of the genitals, pubic areas, or buttocks of the human male or female or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification." OCGA § 16-12-100.1 (a) (7).

- "Sexual excitement" is defined as "the condition of human male or female genitals or the breasts of the female when in a state of sexual stimulation." OCGA § 16-12-100.1 (a) (8).

- "Sadomasochistic abuse" is defined as "flagellation or torture by or upon a person who is nude or clad in undergarments or in revealing or bizarre costume or the condition of being fettered, bound, or otherwise physically restrained on the part of one so clothed." OCGA § 16-12-100.1 (a) (6).

Following this list of offending content categories is the phrase, "that is intended to arouse or satisfy the sexual desire of either the child or the person." The pivotal question is what term or phrase within subsection (e) this qualifying phrase is intended to modify. Does the phrase modify only the term "sadomasochistic abuse" that immediately precedes it? Or the entire series of offending "verbal descriptions or narrative accounts" previously set forth? Or the "contact" itself? The answer to this question is critical not only to

determining the scope of conduct within the statute's reach but also to assessing whether the scope of proscribed conduct is too broad to pass constitutional muster.

Under the canon of statutory construction known as the "rule of the last antecedent," a qualifying phrase "'should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" Lockhart v. United States, 136 S.Ct. SCt 958, 962 (194 LE2d 48) (2016); accord Coleman, 294 Ga. at 174. However, this rule is not absolute, and the inference it raises may be rebutted where "the structure and internal logic of the statutory scheme" so militate. Lockhart, 136 SCt at 962-963, 965; see also Paroline v. United States, 134 S.Ct. SCt 1710, 1721 (188 LE2d 714) (2014) (recognizing that this inference can be overcome by "'other indicia of meaning'"); Coleman, 294 Ga. at 174 (recognizing that this canon applies only "'where no contrary intention appears.'"). Under the alternative "series-qualifier principle," a qualifying phrase appearing at the end of a series should be read to apply to all items in the series "when such an application would represent a natural construction." Lockhart, 136 S.Ct. SCt at 965. While these maxims can be helpful in discerning the meaning of a qualifying phrase, they should not be applied

mechanically, and, in the end, we must glean the import of such a phrase by examining its situation within and relationship to the entire statutory text, as well as the intended purpose of the statutory provision. See id. at 964 (selecting construction of qualifying phrase that would yield the least redundancy among terms within the statute and would most closely follow the structure of a related statute upon which the provision was patterned); Paroline, 134 S.Ct. SCt at 1721; Coleman, 294 Ga. at 173-174.

Here, aspects of the structure of subsection (e) (1) and the particular verbiage of the qualifying phrase lead us to reject both the rule of the last antecedent and the series-modifier principle, in favor of a construction under which the qualifying phrase modifies the prohibited "contact" itself: in other words, it is the contact "that is intended to arouse or satisfy the sexual desire of either the child or the person." In reaching this conclusion, we note that the qualifying phrase appears after the list of four enumerated offending content categories. Were we to apply the rule of the last antecedent, we would read the qualifying phrase as modifying only "sadomasochistic abuse." Compared to the other categories in this list – "sexually explicit nudity," "sexual conduct," and "sexual excitement" – this last category is arguably the most egregious –

9

involving "torture" or "flagellation" – and certainly the most narrowly defined. It thus seems unlikely that the legislature intended to enumerate, on par with three relatively broad categories of offending content, the very narrow content category of "sadomasochistic abuse that is intended to arouse or satisfy the sexual desire of either the child or the person." See, e.g., Paroline, 134 S.Ct. SCt at 1721 (construing qualifying clause in a manner best according with "common sense"); United States v. Bass, 404 U.S. 336, 341 (92 SCt 515, 30 LE2d 488) (1971) (declining to apply rule of last antecedent where its application would be inconsistent "with any discernible purpose of the statute"). For this reason, we find the rule of the last antecedent to be inapposite.

In considering whether the qualifying phrase might, under the series-modifier principle, be intended to modify all four categories of offending content, we note that the phrase makes reference to the sexual desire "of either the child or the person." In making specific reference back to either the child victim or the accused, this provision requires a specific intent to "arouse or satisfy" one of the two parties to the allegedly criminal contact. It is thus the "contact" to which the specific intent is linked, rather than any or all of the categories of offending content described in the statute. By specifying that the

10

victim or <u>the</u> person making the contact be the object of the intent to arouse, the statutory text precludes a construction that links the intent to arouse to the creator of the offending content, rather than to the initiator of the online contact.

Though this construction does not necessarily flow naturally from the grammatical structure of subsection (e) (1), we believe it is the only tenable reading that gives meaning to the article "the" that precedes "child" and "person" in the qualifying phrase. See <u>Kennedy v. Carlton</u>, 294 Ga. 576 (2) (757 SE2d 46) (2014) (statutes must be construed to give meaning to all terms therein). Such a construction, moreover, significantly narrows the scope of the statute and thus effectuates our obligation, in the interpretation of statutes, to adopt a readily available limiting construction where necessary to avoid constitutional infirmity. See <u>Miller</u>, 260 Ga. at 673-674 (reading a specific intent requirement into Anti-Mask Act to avoid overbreadth problems); accord <u>Watson v. State</u>, 293 Ga. 817, 820 (1) (750 SE2d 143) (2013) ("even statutes that impose content-based restrictions on free speech will not be deemed facially invalid if they are readily subject to a limiting construction").

In summary, we read OCGA § 16-12-100.2 (e) (1) to prohibit only that online contact involving verbal descriptions or narrative accounts of any of the

11

four defined categories of offending content and made with the specific intent to arouse or satisfy the sexual desires of the accused or the child victim. The crime of obscene Internet contact with a child is thus comprised of (1) the actus reus – the contact, performed under particular circumstances (with one known or believed to be age 15 or younger; via specified online means; involving verbal descriptions or narrative accounts of content falling into any of the four defined categories) and (2) the mens rea – the specific intent on the part of the accused that his contact will arouse or satisfy the sexual desire of the child or the accused. Having thus construed the statute, we now turn to the question of whether the statute, so construed, can on its face survive First Amendment overbreadth scrutiny.

3. OCGA § 16-12-100.2 (e) is one among several substantive provisions of a larger statutory enactment whose very title makes clear that its purpose is preventing the exploitation of children via electronic means. It is "evident beyond the need for elaboration" that government has a compelling interest in protecting the physical and psychological well-being of children. Osborne v. Ohio, 495 U.S. 103, 109 (110 SCt 1691, 109 LE2d 98) (1990). We nonetheless have the obligation to ensure that, in its zeal to promote this worthy aim, our

12

legislature has not unwittingly curtailed legitimate modes of expression in a real and substantial way. See Final Exit Network, 290 Ga. at 511; Miller, 260 Ga. at 673.

In undertaking this assessment, we must determine whether "'a substantial number of [the statute's] applications are unconstitutional, judged in relation to [its] plainly legitimate sweep.'" Stevens, 559 U.S. at 473. Within the "plainly legitimate sweep" of statutory prohibitions are two unprotected categories of speech relevant to this case, obscenity and child pornography. See Williams, 553 U.S. at 288-289. Obscenity is material "which, taken as a whole, appeal[s] to the prurient interest in sex, . . . portray[s] sexual conduct in a patently offensive way, and . . . taken as a whole, do[es] not have serious literary, artistic, political, or scientific value." Miller v. California, 413 U.S. 15, 24 (93 SCt 2607, 37 LE2d 419) (1973); see also Ginsberg v. New York, 390 U.S. 629, 633 (88 SCt 1274, 20 LE2d 195 (1968) (sanctioning categorical prohibition on material that, while not obscene in relation to adult sensibilities, is found to be obscene as to minors). Child pornography encompasses visual depictions of sexual conduct involving children younger than a specified age. See New York v. Ferber, 458 U.S. 747 (102 SCt 3348, 73 LE2d 1113) (1982). Though the

13

statute here certainly reaches some speech the content of which falls into one of these two categorically unprotected forms of expression, the four enumerated categories of offending content indisputably span expression that falls outside this narrow swath of unprotected speech and thus into the realm of protected expression. The question is whether the mismatch is too great to pass constitutional muster.

In examining the permissible breadth of a statute seeking to curtail various avenues of child exploitation in the digital age, we are, fortunately, not writing on a blank slate. See, e.g., United States v. Williams, supra (overbreadth challenge to federal law criminalizing pandering and solicitation of child pornography); Ashcroft v. Free Speech Coalition, supra (overbreadth challenge to federal law criminalizing various forms of actual and "virtual" child pornography); Reno v. American Civil Liberties Union, 521 U.S. 844 (117 SCt 2329, 138 LE2d 874) (1997) (overbreadth challenge to federal statute prohibiting online transmission of "obscene or indecent" messages to recipients under the age of 18). In Reno, the Court invalidated two provisions of the federal Communications Decency Act, which sought to protect minors from "indecent" and "patently offensive" communications on the Internet by

14

prohibiting the "knowing transmission of . . . indecent messages to any recipient under 18 years of age" and the "knowing sending or displaying of patently offensive messages in a manner that is available to a person under 18 years of age." 521 U.S. at 849, 859. The Court found the scope of these provisions too broad in that they "effectively suppress[] a large amount of speech that adults have a constitutional right to receive and address to one another." Id. at 874. While recognizing the government's compelling interest in protecting children from harmful content, the Court concluded that the provisions at issue were broader than was necessary to achieve this goal. Id. at 875-879. The Court noted that the terms "indecent" and "patently offensive" were undefined in the statute and had the potential to encompass "large amounts of nonpornographic material with serious educational or other value." Id. at 877. In addition, the Court observed that these provisions could cover a range of adult-to-adult online communications in fora such as chat rooms, where the presence of a single minor could render criminal what would otherwise be protected speech among adults. Id. at 880. These considerations led the Court to conclude that the statute's reach was too broad to withstand First Amendment scrutiny.

In Free Speech Coalition, the Court considered the constitutionality of the

federal Child Pornography Prevention Act, which expanded the federal prohibition on child pornography to reach "virtual child pornography," in which technology or youthful-looking adults are used to depict what appears to be, but is not actually, children engaged in sexually explicit conduct. 535 U.S. at 239-240. The statute also prohibited the production and distribution of material "pandered" as child pornography, regardless of whether it actually was. Id. at 241. As in Reno, the Court invalidated the statute as overbroad, finding that its reach was too far beyond the unprotected categories of obscenity and child pornography and that it thus improperly "abridge[d] the freedom to engage in a substantial amount of lawful speech." Id. at 256. With regard to virtual child pornography, the Court found no justification for a ban on such speech, because its definition did not necessarily exclude works containing serious literary, artistic, educational, or other value, and because, unlike with real child pornography, actual children are not used as subjects in – and thereby victims of – the production process. Id. at 246-250. With regard to the pandering provision, the Court held that it was overbroad because it applied to materials without regard to their actual content and applied to those in possession of such materials regardless of how far removed in the distribution chain they were from

16

the actual panderer. Id. at 257-258.

By contrast, in Williams, the Court upheld a child pornography pandering and solicitation provision that was enacted following the invalidation of its predecessor in Free Speech Coalition. 553 U.S. at 289. As the Court described it, "[r]ather than targeting the underlying material, the statute bans the collateral speech that introduces such material into the child-pornography distribution network." Id. at 293. In addition, the Court noted that the statute's definition of child pornography "precisely tracks the material held proscribable in Ferber and Miller." Id. Other features of the statute were also significant in maintaining its validity, including its scienter elements, which require both "knowing" pandering and either the defendant's belief that the material is child pornography or the intent to make another believe this is so. Id. at 294-296. See also Osborne, 495 U.S. at 115 (scienter requirement one factor in conclusion that statute banning possession of child pornography was valid); Miller, 260 Ga. at 674 (specific intent requirement cited as significant in limiting scope of statute in question and, thus, saving it from overbreadth). Cf. State v. Fielden, 280 Ga. 444, 447 (629 SE2d 252) (2006) (absence of specific intent requirement cited as factor in invalidating statute in question).

17

Assessing the statute here against this backdrop, we conclude that, under the narrow construction we have adopted above, OCGA § 16-12-100.2 (e) (1) does not prohibit a real and substantial amount of constitutionally protected expression. The key to this conclusion is the statute's mens rea element, which requires the accused, with the knowledge or belief that the victim is in fact a child younger than 16, to make contact with that victim with the specific intent to arouse or satisfy his own or the victim's sexual desire. This specific intent requirement dramatically reduces the range of expression that is subject to the statutory prohibition. It is also, to some degree, a proxy for elements of the Miller v. California obscenity standard, namely, that the material appeals to a "prurient interest in sex" and that it "lacks any literary, artistic, political, or scientific value," see 413 U.S. at 24: it is difficult to envision a scenario in which an adult's sexually explicit online communication with a child younger than 16, made with the intent to arouse or satisfy either party's sexual desire, would ever be found to have redeeming social value. The specific intent requirement also eliminates the possibility that innocuous communications – for example, a mother's email to her 15-year-old son admonishing him not to read *Penthouse* or a teacher's online lecture describing Michelangelo's *David* –

18

might fall within the statute's proscriptions. See <u>Osborne</u>, 495 U.S. at 113-114 (upholding statute where narrow construction avoids punishing innocuous conduct). In addition, this requirement avoids the problem identified in <u>Reno</u> of potential overreach into the realm of adult-to-adult communications to which children might incidentally be exposed, again foreclosing unintentional encroachment into protected speech.

"Invalidation for overbreadth is strong medicine that is not to be casually employed." (Internal quotation marks omitted.) <u>Williams</u>, 553 U.S. at 293. Though creative attorneys may dream up "fanciful hypotheticals" under which the statute here reaches protected expression, id. at 301, we are not convinced that these scenarios are sufficiently numerous or likely to warrant the statute's wholesale invalidation. See id. at 303 ("[t]he 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'"). We therefore agree with the trial court that OCGA § 16-12-100.2 (e) (1) is not unconstitutionally overbroad under the First Amendment. Accordingly, we affirm.

<u>Judgment affirmed. All the Justices concur.</u>