**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 15, 2024**

# In the Court of Appeals of Georgia

A23A1610. BOONE v. THE STATE.

PIPKIN, Judge.

Appellant Joseph Boone was found guilty by a jury of criminal attempt to commit child molestation, trafficking of a person for sexual servitude, computer pornography, obscene internet contact with a child, and criminal attempt to commit sexual exploitation of a child. He appeals, challenging the sufficiency of the evidence to support his convictions. As more fully set forth below, we agree that his convictions for obscene internet contact with a child and criminal attempt to commit sexual exploitation of a child must be reversed, but we affirm his convictions for the remaining offenses.

When we consider whether the evidence is sufficient to sustain a conviction, we ask whether any rational jury could have found proof

beyond a reasonable doubt of the guilt of the defendant in the evidence adduced at trial, viewing that evidence in the light most favorable to the verdict. And as we consider this question, we must keep in mind that it is for the jury, not appellate judges, to weigh the evidence, pass upon the credibility of witnesses, and resolve conflicts in the evidence. So, if the record contains some competent evidence sufficient to prove beyond a reasonable doubt each element of the crime of which the defendant was convicted, we must uphold the conviction, even if the evidence is contradicted.

(Citation and punctuation omitted.) *Weyer v. State*, 333 Ga. App. 706, 706 (1) (776 SE2d 304) (2015).

Viewed in this light, the evidence adduced at trial shows that in July 2019, an investigator with the Floyd County Police Department working as a member of the Georgia Bureau of Investigation Internet Crimes against Children Task Force ("Investigator"), placed an ad on Craigslist using the "KIK App" name "britbritbaby000." The ad was headed "Helping hand (Athens)," and the text stated that "britbritbaby000" was "looking for a friend to do whatever with so I can get out of bad situation." Boone, using the KIK App name "Bg Dk" responded; he and the Investigator posing as "britbritbaby000" exchanged introductory type messages,

which revealed, among things, that Boone was an EMT working in Atlanta.[1] "Britbritbaby000" messaged Boone that she was looking to make money so she could leave the foster home where she was staying in Athens, and he asked her if she had any skills. When she responded in the affirmative, he replied "like what?," and she told him she could do a lot of things, depending "on what you want." Boone pressed her about what she had in mind, and she replied that she will do "anything for real" and then told Boone that she is "14, and I've got to get out of this house." Boone questioned her about her plan after she leaves the group home, and when she responded that she planned to "live in hotels and make money doing what I can," Boone expressed concern that she might be stepping into a situation that was worse than her current situation.

After a few more exchanges, Boone asked "britbritbaby000" what he needed to do if he wanted to help her. When "britbritbaby000" responded that he could bring her cash on a card, Boone asks "Then what?" She told him that is up to him, and he replied "I had a few ideas initially, but you're so young." When "britbritbaby000" attempted to reassure Boone that she is not that young, he replied that she was young

---

[1] Screenshots of the some of the KIK App messages exchanged between Boone and the Investigator were introduced into evidence at trial.

enough to land him in jail. "Britbritbaby000" told Boone that she was worried that he would snitch on her, and he assured her that he would not and told her that he wanted her to succeed and also to be safe. After he again expressed concern about the "crazy people out there," Boone told "britbritbaby000" that he wanted to "save her" and asked if she wanted out of Athens. She replied that she really just wanted out of the group home, and Boone suggested she could come to Atlanta. "Britbritbaby000" agreed to come to Atlanta and commented that it was probably best if she gets far away.

Boone then messaged, "So you said anything, right" and when "britbritbaby000" replied in the affirmative, he told her "I've always wanted a pet person, LOL." "Britbritbaby000" asked Boone what he meant by that, and he replied, "I don't know. Just a thought. Someone to live at my house and keep me company." "Britbritbaby000" asked, "So like cleaning" and Boone responded, "Yeah. Maybe some other stuff." When "britbritbaby000" asked for an example, Boone told her that "I guess it depends on the situation." "Britbritbaby000" implored Boone to be honest about what he wanted since she needed to know before she made a decision, and Boone replied, "[K]inda like a live-in maid with benefits." "Britbritbaby000"

told Boone that sounded "awesome," and she asked him what else she would be doing beside cleaning. Boone listed cooking, housekeeping, massages and laundry. Boone told "britbritbaby000" that she "probably couldn't handle the other things, LOL. You're too young." She asked him what other things, and he replied, "sexual stuff. You wouldn't know anything about that." She assured him she knew something about that and he asked, "Really? What do you know?" "Britbritbaby000" responded that she has "done oral," and Boone asked her if she is "any good at it?"

Although the Investigator testified that she and Boone continued to communicate during the ensuing months, the record of those messages was lost, and the exchange about oral sex was the last saved message that the Investigator received from Boone until the following year.[2] Later, in February 2020, Boone messaged "britbritbaby000" asking her how she had been, and when she responded that she missed him, Boone replied that he wanted to see her soon. Boone told

---

[2] Records obtained from Boone's KIK account show that there were communications on several different days in late July 2019, on August 3, 2019, August 18, 2019, October 31, 2019, numerous messages between November 21 and November 26, 2019, on December 5, 2019, and then a series of messages beginning on January 23, 2020, up until Boone's arrest in the early morning hours of February 2, 2020. The Investigator could not recall if there was anything sexually explicit in the missing messages and could not say if Boone got "cold feet."

"britbritbaby000" that he wanted to come to get her but then he expressed concern about where they would go. "Britbritbaby000" responded that they could chill in his car, and Boone said that she might get bored and that he wanted to go "somewhere we can be comfortable."

Boone suggested that he might come see her that night if it was not too late when he got off from work, and when she asked him what they were going to do, he replied, "just chill in the car, I guess." She questioned if he wanted to take her back with him, and he told her, "That would be nice. You trying to stay with me all night, huh." She said that was up to him, and he asked her what she wanted to do. She referred to their previous exchanges, and Boone asked her to be more specific. She replied, "What all you said about being your slave" but added that it was fine if he does not want that anymore. He replied "you know I do." After some back and forth about whether she would be missed at the group home, she reassured him that she would not be missed, but added, "You don't care I'm like 14 do you? Like, for real for real." Boone questioned why she would bring that up and then commented that she seemed really mature. She explained that she did not want to make him feel weird, and Boone asked "how do you wanna make me feel?" "Britbritbaby000" replied that she

6

wanted to make him feel good, and he asked how she was going to do that. "Britbritbaby000" told Boone that she liked it when he told her what to do, and Boone said she could start by showing him something. She asked what he meant, and he replied "Your body." She informed Boone that she does not send nudes, and, when he asked "why not?" she told him that they get stolen. Boone wanted to know if she would send a nude without her face in it, and "britbritbaby000" informed him that she has had those stolen too, to which he responded, "Damn. Not even for me." She then sent him a photograph of a fully-clothed young woman,[3] and Boone said she was cute.

"Britbritbaby000" then asked Boone if he was "still trying to take care of [her]" and he replied, "Yeah. You're gonna be my slave; right?" When she responded in the affirmative, he said "Then I'll have to keep you fed. LOL. My pet." He then told her that, "If you get out of line, I'll have to spank you." When she asked, "It'll feel good though, right?" Boone replied, "When you've been good it will. If

---

[3] The photograph the Investigator sent was of a young woman in her early twenties who had volunteered to have pictures taken by the police for this purpose. The Investigator testified that she kept several of these type of photographs "readily handy" for use in this type of sting operation.

you've been bad, I don't know." When she questioned what he meant by her being "bad," Boone replied, "being disobedient . . . but I'm sure you'll be a good girl for me."

Boone and "britbritbaby000" made a plan to meet late that night. She asked if she should pack a few things, and he wanted to know if she was going to pack her whole life. She told him that she did not have much and was just thinking to pack a change of clothes; Boone assured her that it is better to have it and not need it than to need it and not have it. He stated that he hoped to have the following day off work so he could be with her all day if she came back with him. They then agreed that Boone would text her when he got off work.

The messages picked back up with "britbritbaby000" telling Boone that she was going to take a shower and "get cute." He asked her if she shaved, and when she said, "for sure," he replied "good." After they exchanged a few additional messages, he told her that he was getting off of work and should be there around 2:25 a. m. He also told her that he had good news and bad news – he said the bad news was that he could not bring her back with him that night because he had to work the following afternoon, but then said he still wanted to see her and asked if she was cool just to chill

in the car for a bit and ride around and talk. He also asked her to take a "selfie" and send it to him, and when she complied, he replied that she was "cute AF." He then messaged her that he was about six minutes away from their meeting point and she led him to believe that she was walking there to meet him.

Boone arrived at the arranged meeting spot, and police officers approached him with lights and sirens activated. Boone attempted to drive away, but police cut off his attempt to exit and placed him under arrest. Boone was read his *Miranda* rights and agreed to talk to police at the scene. He told police that he is 31 years old and that he drove there to meet a girl he believed to be 14 years old, but said that he was trying to help her; this recording was played for the jury at trial.

1. Boone first challenges his conviction for criminal attempt to commit child molestation. The indictment charged that Boone committed this crime by engaging

> in written matter describing sexual acts he wanted to engage in with . . . a person [he] believed to be a 14 year old female child . . . and did travel to a location in Floyd County with the intention to meet said child and engage in sexual conduct with said child, including spanking said child, engaging in massages, having said child act as his "slave," and doing "sexual stuff," with the intent to arouse and satisfy the sexual desires of the accused and the child, said acts constituting a substantial step toward commission of said crime[.]

9

Boone argues he cannot be convicted of this offense because the evidence was insufficient to show that he took a "substantial step" toward committing the crime based on his assertion that he lacked the intent to commit the crime of child molestation.

Although Boone acknowledges that some of his communications with the person he believed to be a 14-year-old girl could be considered sexual in nature, he says that, at the time he drove out to meet that person, his intent was to just "chill in the car for a bit" and ride around and talk. While Boone attempts to downplay the sexual content of his messages in an attempt to show that he did not intend to commit the crime of child molestation, it is for the factfinder to determine whether a defendant possessed the necessary intent "after considering all the circumstances of the acts of which the accused is charged." (Citation and punctuation omitted.) *Schlesselman v. State*, 332 Ga. App. 453, 455 (1) (773 SE2d 413) (2015). Indeed, "[t]he communications between [Boone] and the alleged child need not describe particular sexual acts that he intended to engage in with the child to establish intent because intent, which is a mental attitude, can be inferred." (Citation and punctuation omitted.) Id. at 455 (1). Here, the evidence shows that while Boone's plan to bring

10

"britbritbaby000" back to Atlanta to be his "live-in maid with [sexual] benefits" or "slave" had to be postponed, he considered this to be "bad news" and there is no indication that he did not intend to carry out that plan at a later date. Moreover, contrary to Boone's assertion, there was at least some evidence that Boone intended to do more than just sit in his vehicle and talk – he drove a long distance late at night after he got off work to see someone he believed was a 14-year-old girl, told her that he wanted to "go somewhere we can be comfortable," asked her to send him pictures while he was traveling there, made references to her getting cute for him, asked her if she had shaved as part of her preparations to see him, and was pleased when she responded that she had. Based on the foregoing, Boone's conviction for criminal attempt to commit child molestation was authorized by the evidence adduced at trial. See *Reid v. State*, 349 Ga. App. 196, 198-199 (1) (825 SE2d 555) (2019) (physical precedent only); *Schlesselman*, 332 Ga. App. at 455 (1).

2. Boone argues that the evidence supporting his conviction for the offense of trafficking persons for sexual servitude was also legally insufficient because, he argues, there was no evidence that he recruited or enticed the person he believed to be a 14-year-old girl for the purposes of sexual servitude as alleged in the indictment.

11

Under OCGA § 16-5-46 (c), "a person commits the offense of trafficking an individual for sexual servitude when that person knowingly: . . . (2) recruits [and] entices an individual for the purpose of sexual servitude[.]" Sexual servitude is defined in OCGA § 16-5-46 (a) (8) (A) and (C) as "any sexually explicit conduct or performance involving sexually explicit conduct for which anything of value is directly or indirectly given, promised to, or received by any individual, which conduct is induced or obtained: (A) by coercion or deception; . . . (C) From an individual whom the accused believes to be under the age of 18 years[.]" According to Boone, his conviction should be reversed because the evidence showed that the Investigator enticed Boone with the Craigslist ad when she said that she was "looking for a friend to do whatever with so I can get out of a bad situation," and that she continued to coerce and entice him by telling him that she missed him and thought the idea of being his slave was "hot." However, as we have explained before, "an individual under 16 years of age [which Boone believed "britbritbaby000" to be] cannot consent to or be a willing participant in sexual conduct." *Yeamans v. State*, 366 Ga. App. 780, 790 (2) (884 SE2d 380) (2023). Further, Boone ignores that instead of doing what "britbritbaby000" suggested and provide her with money to help her out of the group

12

home, he convinced her to come to Atlanta so she could be his "live in maid with benefits," his "pet," and his "slave," who would do domestic chores, give him massages, and do "sexual stuff," and in return he would "save her" from all the "crazy people" out there.[4] The evidence that Boone committed the crime of trafficking of a person for sexual servitude was also sufficient. *Brailsford v. State*, 366 Ga. App. 331, 332 (1) (a) (882 SE2d 648) (2023).

3. Boone next argues that the evidence was insufficient to convict him of computer pornography. As is relevant here, OCGA § 16-12-100.2 (d) (1) makes it a crime for any person to

> intentionally or willfully . . . utilize a computer wireless service or Internet service, including, but not limited to, a local bulletin service, Internet chat room, e-mail, instant messaging service, or other electronic device to seduce, solicit, lure, and entice, or attempt to seduce, solicit, lure, or entice a child, [or] another person believed by such person to be a child . . . to commit any illegal act . . . relating to the offense of . . . child molestation or aggravated child molestation; relating to the offense of enticing a child for indecent purposes; . . . or to engage in any conduct that by its nature is an unlawful sexual offense against a child.

---

[4] This also forestalls any entrapment defense, which, in any event, is an affirmative defense and not a challenge to evidence sufficiency. See *Yeamans*, 366 Ga. App. at 790 (2).

Echoing his arguments in the previous two divisions, Boone contends that he also could not be convicted of this crime because he lacked the intent to commit child molestation when he drove out to meet "britbritbaby000," that he did not engage in sexually explicit conversations, that all he wanted was to meet up with her to chill in his car and talk, and that it was "britbritbaby000" who coerced him into picking her up. For the same reasons discussed in Divisions 1 and 2, however, these arguments are unavailing, and Boone's conviction for the offense of computer pornography is affirmed.

4. Boone next challenges his conviction for the offense of obscene internet contact with a child in violation of OCGA § 16-12-100.2 (e) (1). That section makes it a crime if a person

> has contact with someone he . . . believes to be a child via a computer wireless or Internet service . . . and the contact involves any matter containing explicit verbal descriptions or narrative accounts of sexually explicit nudity, sexual conduct, sexual excitement, or sadomasochistic abuse that is intended to arouse or satisfy the sexual desire of either the child or the person . . . .

14

Boone argues that his exchanges with "britbritbaby000" were not "explicit verbal descriptions" or "narrative accounts" as required by the statute. We are constrained to agree.

As our Supreme Court explained in *Scott v. State*, 299 Ga. 568, 574 (2) (788 SE2d 468) (2016),

> the crime of obscene internet contact with a child is . . . comprised of (1) the actus reus – the contact, performed under particular circumstances (with one known or believed to be age 15 or younger; via specified online means; involving verbal descriptions or narrative accounts of content falling into any of the four defined categories) and (2) the mens rea – the specific intent on the part of the accused that his contact will arouse or satisfy the sexual desire of the child or the accused.

Here, none of the messages exchanged with "britbritbaby000" contained either "*explicit* verbal descriptions" or "*narrative accounts*" of content falling within the four defined categories set out in the statute. Although there were general references to "sexual stuff," and "oral," such references are simply not the type of explicit verbal descriptions or narrative accounts addressed by the statute. As for any

15

sadomasochistic abuse,[5] Boone's references to wanting a "pet," and to spanking likewise did not involve either narrative accounts or graphic descriptions as required by the statute.

The State suggests that Boone's request for pictures would fall into the "sexually explicit nudity"[6] category, but, once again, Boone only asked to see "britbritbaby000's" "body," and he did not specify what, if any, body parts she should reveal, he did not provide any description or details about what he wanted to see, and he did not ask to see more when she sent him a fully clothed picture. Consequently, we agree with Boone that the messages he exchanged with the person he believed to be a 14-year-old girl did not include any "explicit verbal descriptions" or

---

[5] Under OCGA § 16-12-100.1 (a) (6) "[s]adomasochistic abuse means flagellation or torture by or upon a person who is nude or clad in undergarments or in revealing or bizarre costume or the condition of being fettered, bound, or otherwise physically restrained on the part of one so clothed." Although Boone mentioned spanking "britbritbaby000" and that the spanking might not "feel good" if she misbehaved, there is nothing to suggest these spankings would amount to flagellation or torture or that "britbritbaby000" would be nude, in undergarments, or in a revealing or bizarre costume when the acts occurred.

[6] "Sexually explicit nudity" as defined in OCGA § 16-12-102 (7) "means a state of undress so as to expose the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering or any portion thereof below the top of the nipple, or the depiction of covered or uncovered male genitals in a discernibly turgid state."

"narrative accounts" of any of the four categories listed in OCGA § 16-12-100.2 (e) (1). Accordingly, his conviction for obscene internet contact with a child must be reversed.

5. Lastly, Boone argues that the evidence was insufficient to support his conviction for criminal attempt to commit sexual exploitation of children. Boone was charged with sexual exploitation of children in violation of OCGA § 16-12-100 (b) (1) in that he did "knowingly employ, use, persuade, induce, entice, and coerce . . . a person believed by the accused to be a minor, to engage in sexually explicit conduct, for the purpose of producing a nude photo[.]" Boone argues that his conviction must be reversed because there was no evidence that he persuaded, induced, enticed or coerced "britbritbaby000" to engage in "sexually explicit conduct." Sexually explicit conduct is defined in OCGA § 16-12-100 (a) (4) (D) to include, among other things, the "[l]ewd exhibition of the genitals or pubic area of any person[.]" Citing *Weyer v. State*, 333 Ga. App. at 711-712 (1) (b), the State argues that Boone's request that "britbritbaby000" send him a picture of her "body" was sufficient to authorize Boone's conviction of this offense, arguing that a jury could use their "common sense" to reasonably infer that Boone was requesting a nude photograph of an

17

underage girl displaying her genitals or pubic area. But even if it can be reasonably inferred that Boone's request for a photograph of "britbritbaby000's" "body" meant he wanted her to send a nude photograph, without a more explicit request, it is simply too far of a stretch to say that his request was an attempt to persuade her to send him a photograph of her lewdly displayed genitals or pubic area. Further, when "britbritbaby000" sent him a photograph in which she was fully clothed, Boone did not ask her to send one that was more explicit or revealing. Accordingly, Boone's conviction for criminal attempt to commit sexual exploitation of children must also be reversed. Cf. *Weyer*, 333 Ga. App. at 711-712 (1) (b) (in which we upheld defendant's sexual exploitation conviction because a jury could infer that defendant wanted nude photographs showing intimate areas of the victims' bodies when, among other circumstances and messages, he asked for "NAKED" photographs and used explicit language to refer to the body parts he wanted to see).

*Judgment affirmed in part and reversed in part. Rickman, J., concurs. Dillard, P. J., concurs fully as to Divisions 1, 2, 3 and 5 and in judgment only as to Division 4.*